THE PEOPLE, *ex rel.* John H. White and Samuel Freeman, *vs.* JOHN C. HULBERT, County Judge of Saratoga County, and others.

The right to appoint commissioners to issue the bonds of a town, to aid in the construction of a railroad, under the act of the legislature, of May 1869, (*Laws of* 1869, *ch.* 907,) depends upon the fact of a majority in number of the taxpayers of the town, owning or representing a majority in amount of taxable property within the limits of the town, petitioning the county judge for that purpose. The last assessment roll of the town is made the criterion for ascertaining that fact.

When a petition is presented to the county judge, for the appointment of commissioners under the act, the question to be determined by him is, whether or not the petition answers this requirement of the statute.

It is a valid objection to the petition, that a portion of the names upon it are

signed as trustees, executors, administrators and guardians, respectively, and that it does not appear that such trustees &c. had authority to sign the petition; where the name signed to the petition as executor or administrator does not appear on the assessment roll, on which the assessment is to the "estate" of the testator or intestate, and the name of the person signing the petition as executor or administrator is omitted.

In such a case, it not appearing to the county judge that the signers are in fact what they assume to be, their signatures should be, and, unless they are necessary to make up the requisite majority, in number and amount, will be assumed to have been, excluded by the county judge.

It is not necessary that the petitioners should be owners of the property for which they are taxed. If they *represent* it, in any capacity, and are assessed on the tax list as so representing it, then they are taxpayers, and may become petitioners.

Thus, where one is assessed on the roll as *guardian*, he has the right to sign the petition as guardian, adding the estate which he represents. POTTER, J., dissented.

Where a religious society is assessed on the last assessment roll, and it is proved before the county judge that the petition was signed in its name, by officers of the society, in pursuance of a resolution of the board of trustees authorizing them so to sign, the society is entitled to be counted by the county judge, as a proper petitioner. POTTER, J., dissented.

A county judge does not, by signing a petition for bonding a town, in aid of the construction of a railroad, become incompetent to take cognizance of the proceeding.

A county judge, standing in the position of a taxpayer who has voted for the issuing of town bonds, is not thereby disqualified for counting the votes and ascertaining whether a majority, in number and amount of taxable property represented, has been given for the bonding of the town, or not.

If such majority has been given, the county judge has no power, in the premises, except to obey the statute, which makes it his duty, in such case, to appoint three commissioners to issue the bonds.

Upon a *certiorari* to a county judge, to review his proceedings upon a petition for bonding a town in aid of the construction of a railroad, it is not competent for the relators to bring in question the eligibility of the persons whom the county judge has selected as commissioners to issue bonds; where no such question is made by the affidavit or complaint on which the *certiorari* was issued, and the writ does not call for any return on which the question of the eligibility of the commissioners can be examined, and the return fails to show anything on that subject, except that the order or judgment of the county judge states that they are freeholders, taxpayers and residents of the town.

In the face of the decisions of the Court of Appeals in the *Bank of Rome* v. *The Village of Rome,* (18 *N. Y.* 39;) *Starrin* v. *The Town of Genoa,* (23 *id.* 439;) and *Gould* v. *The Town of Sterling,* (*Id.* 466,) it cannot be determined that

The People *v.* Hulbert.

the act of the legislature, of May 18, 1869, permitting municipal corpora‑
tions to aid in the construction of railroads, (*Laws of* 1869, *ch.* 907,) is un‑
constitutional and void.

Where proceedings for the bonding of a town, instituted in 1870, were based
upon the assessment roll of 1869, instead of that of 1870, but the evidence
clearly showed that at the time the proofs were taken, the assessment roll
of 1870 had not been completed; *Held* that the requirements of the statute
had been complied with.

THE Saratoga, Schuylerville and Hoosac Tunnel Rail‑
road Company was duly organized and incorporated
the 4th day of April, 1870. This company was formed for
the purpose of constructing, maintaining and operating a
railroad for the conveyance of persons and property, for
public use, from some convenient point in the village of
Saratoga Springs, in the county of Saratoga, running east
to Schuylerville, thence across the canal and Hudson
river to the village of Greenwich, in the county of Wash‑
ington, a distance of eighteen miles. Its capital stock
was $300,000. In the month of April, 1870, after this
railroad company was thus formed, a petition was gotten
up for the purpose of bonding the town of Saratoga
Springs in aid of the construction of said railroad. This
petition stated, in substance, that the said railroad com‑
pany had been organized and incorporated, and the object
and purpose thereof; that the signers of said petition
were each taxpayers of the said town of Saratoga Springs;
that their names appeared upon the last assessment roll
of said town, as owning or representing a majority of the
taxable property within the limits of said town, and they
were a majority in number of the taxpayers on said roll.
Said petition was addressed to the Hon. John C. Hulbert,
county judge of the county of Saratoga, and referred to
the general town-bonding act, (*Laws of* 1869, *ch.* 907,) and
further stated that the petitioners, as such taxpayers, did
thereby apply to said county judge, and desire that the
bonds of the said town might be created and issued in the
manner specified in said act, to the amount of $100,000,

and that the same, or the proceeds thereof, might be invested in the capital stock of the said railroad company, for the purpose of aiding it in the construction of said railroad, pursuant to the provisions and intent of said act. The said petition, after having been circulated and signed by the petitioners, was duly verified by the affidavit of George S. Batcheller, one of the petitioners, subscribed and sworn to on the 31st day of August, 1870, and was afterwards, and on the same 31st day of August, presented to the said county judge, and duly filed. Upon the presentation and filing of this petition, the said county judge made an order directing a notice to be published in the *Saratogian,* a newspaper published in Saratoga Springs, county of Saratoga, setting forth that on the 20th day of September, 1870, at 10 A. M., at his office in said town of Saratoga Springs, he would proceed to take proof of the facts set forth in said petition; which order was signed by the said judge. On the same day a notice was made and signed by him as county judge, for publication, pursuant to the said act and order. The said order and notice were both published twice in said *Saratogian,* the first publication having been on the 8th day of September, 1870, and the last on the 15th day of that month. Pursuant to such notice, the county judge attended at the time and place and for the purposes in said order and notice mentioned, to wit: On the 20th day of September, 1870, at 10 A. M., at his office, and proceeded to take the proofs of the facts set forth in said petition. Henry W. Merrill appeared as counsel for the petitioners, and Lemuel B. Pike appeared in behalf of the relator, Samuel Freeman, to oppose the application of the petitioners. L. Varney also appeared on said hearing, as counsel for the contestants.

There were forty-two petitions. They were all printed, except the signatures thereto, which were in manuscript. They all were addressed or captioned in the same words,

and contained the same statements, and were all exactly alike, and formed, in fact, but one petition. This was done for the convenience of circulation and signing. These forty-two petitions were all annexed together before they were verified and presented to the county judge, as afore-said. For the convenience of reference, and the taking of the proofs of the signatures thereto, respectively, the judge marked them with the letters of the alphabet, as "Paper A," "Paper B," &c., so far as such letters held out, and the residue were marked and designated as papers "A No. 1," "B No. 2," &c. They are all so designated and referred to in the evidence taken by the judge.

At said hearing before the county judge, the existence and incorporation of the Saratoga, Schuylerville and Hoosac Tunnel Railroad Company was duly proved, by a certified copy of the articles of association in the office of the Secretary of State. No objection to this proof was made. The assessment roll of the town of Saratoga Springs for the year 1869 was produced, identified and proved to be such, and was offered and received in evidence. It was also proved, by Charles A. Allen, one of the assessors of said town, that, even at the time of said hearing, the assessment roll for 1870 had not then been completed; that the twenty days' notice for hearing grievances had been given, but that said twenty days' notice had not then expired. Fred. N. Owen, the town clerk, testified that no assessment roll for the year 1870 had been filed in his office. The contestants offered no proof, and did not even attempt to prove, that the assessment roll of said town for the year 1870 had been made, completed, corrected, signed, verified or filed. It was claimed that there was then, in fact, no assessment roll of said town for the year 1870, within the intent and meaning of said bonding act, or of any statute.

The proof of the signatures of the petitioners was clear. The signature of each petitioner who was a taxpayer of

The People *v.* Hulbert.

said town, and whose name appeared upon the assessment roll of said town, for said year, was fully proved, with the exception of the nine names mentioned and excepted in the testimony of George S. Batcheller, which nine names were not counted in ascertaining the number of petitioners, nor were the sums set opposite their names, respectively, added into or made a part of the aggregate amount of property owned or represented by the other petitioners.

It appeared by the assessment roll in evidence, and by proof of actual count, that the whole number of the names of taxpayers on said roll was 1529. That the number of the petitioners whose names appear upon the petition, and whose names also appear upon said assessment roll, as taxpayers thereon, was 830, exclusive of those on the petition who were taxed for dogs only, and exclusive also of the nine names referred to in the testimony of George S. Batcheller. The aggregate amount of property assessed on the assessment roll, against all the taxpayers of the town, was $2,318,170; and the aggregate amount of the property owned or represented by the said 830 petitioners, and assessed to them on the said roll, was $1,189,394, the same being a majority of $30,309, and a majority of petitioners of sixty-five names.

### TABULAR STATEMENT.

The number of the petitioners whose signatures were proved, and who appeared on said roll as taxpayers of said town, exclusive of the nine excepted names, and exclusive, also, of those who were taxed for dogs only, was . . . . . . . . . . . . . . . 830 names.

The whole number of taxpayers on said roll, including those who were taxed thereon for dogs, was 1529 names, one half of which is 764½ "

Majority of such petitioners, . . . . 65½ "

The aggregate amount of the whole assessed value of the

property of said 830 petitioners, as set down on said roll, was . . . . . . . . . . . . . . . $1,189,394
The whole assessed value of all the taxpayers of said town, as set down on said roll, was $2,318,170, the one half of which was . . 1,159,085

Majority of property, . . . . . . . .  30,309
Majority of petitioners, 65½ names, and of property, $30,309.

The county judge, after hearing the proof, and after hearing counsel for the respective parties, did adjudge and determine that the petitioners were a majority of the taxpayers whose names appeared upon the last tax list or assessment roll of said town, and did own or represent a majority of the taxable property within the limits of said town, and did determine that said Saratoga, Schuylerville and Hoosac Tunnel Railroad Company was a railroad corporation duly organized and formed by virtue of the laws of the State; and did appoint and commission Henry W. Merrill, Aaron B. Olmstead, Edward R. Stevens, commissioners, with power and authority to create and issue the bonds of the said town of Saratoga Springs, to the amount of $100,000, which sum did not exceed twenty per cent of the taxable property of said town, nor the amount set forth in said petition; and to invest the same, or the proceeds thereof, in the capital stock of the said railroad company, in conformity to the prayer of said petitioners, and the provisions of said chapter 907 of the laws of 1869, and the amendments of said law; which determination was made and dated September 22, 1870, and was signed by the county judge. Which determination, together with the petitions, orders, notices and proofs, were filed and entered of record in the clerk's office of the county of Saratoga, on the 29th day of September, 1870, as required by said act.

Upon an affidavit of the relators, sworn to on the 22d

of October, 1870, an order was made at a special term of the court, before Justice ROSEKRANS, on the 29th day of October, 1870, that a *certiorari* should issue in the name of the people, directed to said county judge, commanding him to make return of all orders, dockets, judgménts, records and decisions, made or caused to be made by him in these proceedings, and the evidence had or given before him, to the general term of the Supreme Court. In pursuance of said order, a writ of *certiorari* was issued and tested the 29th day of October, 1870. In obedience to which writ the county judge made his return to the Supreme Court, which was filed in the office of the clerk of Saratoga county on the 31st day of December, 1870.

*L. B. Pike* and *L. Varney*, for the relator.

I. It is now well settled, that upon a *certiorari* the court may go beyond the inquiry whether the inferior tribunal had jurisdiction, and whether its proceedings and judgment were within the jurisdiction, and may examine the case upon the whole evidence to ascertain whether any error had been committed in the proceedings before such inferior tribunal. (*The People* v. *Board of Police*, 39 *N. Y.* 506. *Same* v. *Board of Assessors, Id.* 88. *Same* v. *Van Alstyne*, 32 *Barb.* 134. *Same* v. *Overseers of Ontario*, 15 *id.* 286, 293. *Same* v. *Lawrence*, 54 *id.* 589.)

II. These proceedings are founded on Session Laws of 1869, chapter 907. Section 1 says that whenever a majority of the taxpayers of any municipal corporation in this State, whose names appear upon the last preceding tax list or assessment roll of said corporation, as owning or representing a majority of the taxable property in the corporate limits of such corporation, shall make application to the county judge of the county in which such corporation is situated, by petition, verified by one of the petitioners, setting forth that they are such a majority of the taxpayers, and represent such a majority of taxable property, and

that they desire that such municipal corporation shall create and issue its bonds to an amount named in such petition, (but not to exceed twenty per cent of the whole amount of taxable property, as shown by said tax list and assessment roll,) and invest the same, or the proceeds thereof, in the stock or bonds of such railroad company in this State, as may be named in said petition, it shall be the duty of the said county judge, &c. The same section further provides that "any solvent moneyed manufacturing or other corporation or company, formed under the laws of this State, as being assessed on personal property therein, shall have all the rights and privileges under this act, so far as property representation is concerned, as other taxpayers. And the board of directors or trustees of any such corporation or company, may apply to the county judge, by petition, in the same manner as herein provided for other taxpayers."

It was a condition precedent to first show the legal existence of corporations or companies who have signed said petition, and that they were solvent. There is no proof of the existence of corporations or companies in this case.

By section 2 of said act, the county judge is required "to take proof as to the allegations in said petition," and if it shall appear satisfactorily to him that said petitioners do represent a majority of the taxpayers of said municipal corporation, as shown by the last preceding tax list or assessment roll, and represent a majority of the taxable property upon said last list or roll, he shall so adjudge and determine, and cause the same to be entered of record. And such judgment, and the record thereof, shall have the same force and effect as other judgments and records in courts of record in this State."

III. What competent proof is required before the county judge to authorize a judgment of $100,000 against the town of Saratoga Springs, under this act? Can the court say that it is sufficient proof, to swear that the witness

The People *v.* Hulbert.

saw a certain individual sign as president of a corporation, or saw some one sign for a company? Does that prove the existence of the corporation or company? Must they not show the existence of the company or corporation by competent and legal proof? And that the said company or corporation authorized the signing of the petition? This court cannot judicially determine, from this case, that there are companies or corporations in existence who claim to have petitioned in the case. The county judge was sitting as a court, heard objections and decided upon the same; swore witnesses and took their testimony, and adjudged and determined upon the case; and his judgment was entered of record. He was in no manner acting ministerially.

IV. Section 3 of said act requires the county judge to appoint and commission three persons who shall be freeholders and residents, and taxpayers, within the corporate limits of such corporation, to be commissioners. There is no evidence in the case to show that the commissioners thus appointed are freeholders. Proving that they were each taxpayers in 1869, in no manner proves that they were freeholders at the time of appointment.

Section 4 of the act requires the said commissioners to issue the bonds of said town, and if required by the petitioners, in their petition, to take stock or bonds of the railroad company, and to exchange for them at par, or they may sell the town bonds and invest the proceeds thereof in such stock or bonds of such railroad company.

By section 6, of said act, the bonds so issued are made a charge and lien upon the real and personal estate of the town of Saratoga Springs, and when they become due, shall be collected and paid in like manner as other debts and obligations and charges against said town.

Section 7 of said act requires that all moneys received from said commissioners, by said railroad company, shall

The People *v.* Hulbert.

be faithfully applied to the construction and equipment of said railroad, and for no other purpose.

V. There is nothing in this act, or its subsequent amendments, whereby the faithful performance of the commissioners and of the railroad company can be required, to carry out the provisions of the statute. If the commissioners issue the bonds to the amount of $100,000, and deliver them to the railroad company, as required by this act, and take in exchange stock or bonds of said railroad, the town has no assurance that the road will ever be built, or that their bonds will be worth the paper which they are written upon. The company may never build the road, and there is no power, either by statute or common law, whereby they can be compelled; but the payment of the bonds of the town can be enforced, on becoming due, principal and interest; and where is the value, security and indemnity, which the town receives for its bonds? It is nothing more nor less than donating (by the legislature) this large sum of money, into a few individual hands, to be used by them at their will and caprice, and for the purpose of advancing their own private interest. There being no adequate remedy which the town can avail itself of, for compelling the faithful appropriation of the money, by these individuals, who exist merely under a legislative act, we say the law under which these proceedings are taken is unconstitutional and void. (*Sweet* v. *Hulbert*, 51 *Barb.* 312, *and cases cited.*) And any legislative enactment whereby taxes can be assessed through judicial proceeding, and judgment obtained, which is a charge and lien upon the real and personal property, for the purpose of paying the same into the hands of a railroad company for building and operating a railroad, when there is no provision made for the faithful appropriation of the money—indemnity or security given, nor any assurance that the stock of the railroad will be of any value—we say that the enactment is unconstitutional and void; it takes private property from

individuals by legislative enactment, and gives it to this company without just compensation or its equivalent. This statute is clearly in conflict with the fundamental law of the constitution.

VI. Henry W. Merrill is one of the directors of said railroad company, and is also one of the stockholders of said company. E. R. Stevens is one of the stockholders. They are also two of the commissioners appointed by the county judge, with authority to create and issue the bonds of said town, and invest the same or the proceeds thereof in the capital stock of said railroad company. Can they act in a double capacity? Is it right that they should act as the agent of the town in issuing bonds, and they, themselves, become the purchasers of these bonds. *Kent,* (4 *Com.* 438,) says, that " a person cannot act as the agent for another, and become himself the buyer. He cannot be both buyer and seller at the same time, or connect his own interest in his dealings as an agent or trustee for another. It is incompatible with the fiduciary relation. *Emptor emit quam minimo potest; venditor vendit quam maximo potest.* The rule is founded on the danger of imposition and the presumption of the existence of fraud, inaccessible to the eye of the court. The policy of the rule is to shut the door against temptation, and which, in the cases in which such relationship exist, is deemed to be of itself sufficient to create the disqualification. This rule is well settled in the English and in our American jurisprudence."

The same person cannot act as agent for both parties in making a contract. A contract so made will not be enforced. (*N. Y. Cent. Ins. Co.* v. *National Protection Ins. Co.,* 14 *N. Y.* 85. *Utica Ins. Co.* v. *Toledo Ins. Co.,* 17 *Barb.* 132.) A sub-agent of an insurance company cannot issue a policy or make any agreement on the part of the company to issue a policy to himself. (*Bentley* v. *Columbia Ins. Co.,* 17 *N. Y.* 421. *Dobson* v. *Racey,* 3 *Sandf. Ch.* 60. *Moore* v. *Moore,* 5 *N. Y.* 256.) They are the authorized

agents of the town to create and issue the bonds of said town and invest the same, or the proceeds thereof, in the capital stock of the railroad company. They are made the guardians of the town in this transaction, and are called upon to watch with vigilance the interests and trusts committed to their charge, and especially when the bonds are sold to the railroad company. I ask how can they do so when they themselves are the purchasers? The court will not uphold such a proceeding. It is tainted with fraud. No matter what honest, honorable or high minded gentlemen they may be. No man, ever so pure, should ever occupy such a position.

VII. No person has authority to sign in a representative capacity, unless it is so expressly stated in the appointment, and no proof of this character was given in evidence. Guardians, executors, administrators, trustees of churches, &c., have no such power given to them. " The guardian's trust is one of obligation and duty, and not of speculation and profit. He cannot reap any benefit from the use of the ward's money. He cannot act for his own benefit in any contract, or purchase or sale, as to the subject of the trust." (2 *Kent's Com.* 228.) Trustees have no power permanently to convert the nature of the trust property by laying out money in the purchase of real estate, unless a special authority is conferred upon them by the trust instrument. . (*Hill on Trustees,* §§ 377–379.) No trust instrument was shown, giving such power, or any power whatever, and yet the several guardians who have signed said petition seek to convert the real and personal property of their wards into the bonds of said railroad company, contrary to all precedent or right, and especially when one of them is a director and stockholder in the railroad company. (*See also Hill on Trustees,* 546, 568.) It cannot be claimed on this argument, by counsel for the railroad company, that those who signed in a representative capacity had the absolute right,

The People *v.* Hulbert.

on the ground that this railroad would greatly enhance the property of their *cestuis que trust*, when there is no security given by these commissioners to the town for the faithful application of the money, nor by the railroad company that they will ever build the road, or that the stock taken in exchange for bonds will be of par value, or any value. It is a rule in equity, that no act of the trustee shall prejudice the *cestui que trust*. "The law will not allow the trustees the least personal advantage from the trust estate; a rule which is universal and absolute, subject to no qualifications or exceptions, and holds those occupying fiduciary relations to the property to the strictest fairness and integrity towards their principals, and to prevent them from making use of their position to benefit themselves at the expense or disadvantage of their principals." (*Hill on Trustees, p.* 445. 2 *Washburn on Real Prop. pp.* 486, 448, 3*d ed.*) Deducting those who signed in a representative capacity, also the county judge, and the petitioners are clearly in the minority.

VIII. Trustees of churches are prohibited, under the statute, from selling or incumbering the real estate of the church, without first applying to the court, and obtaining an order for that purpose. (1 *R. S.* 1184, § 11.) Their duty is merely to manage the church for the purposes for which it was erected, and none other. They have no right to incumber the same or assist in it; and the signing of the petition by the trustees or president, even with the consent and direction of all the church members, in no manner grants to them authority to place an incumbrance upon the same.

IX. The bonding of the town should have been based upon the assessment roll of 1870. The law requires the assessment roll to be made out and completed, on or before the first day of August in every year. (1 *R. S.* 718, § 17, 4*th ed.*) The statute under which these proceedings are taken only allows petitioners to sign whose names ap-

pear on the last assessment roll, before judgment is given for the commissioners to bond. Judgment was rendered in these proceedings on the 22d of September, 1870.

X. In proceedings created by special statute, the courts hold the parties to a strict requirement. (*See manuscript opinion of Court of Appeals, in The People ex rel. Averill* v. *The Adirondack Co.*)

XI. The county judge being a petitioner in his own right, as well as trustee, was disqualified from adjudicating upon the matters contained in the petition. Chap. 280, § 81, Session Laws of 1847, provides that "no judge of any court shall have a voice in the decision of any cause in the subject matter of which he is interested." "No judge of any court can sit as such in any cause to which he is a party," &c. (2 *R. S.* 463, § 2, *4th ed.*) And these statutes are but declaratory of what the law has always been. (*Oakley* v. *Aspinwall,* 3 *N. Y.* 550.) It is a principle of the common law, that a judge has no power to decide his own case, or a case in which he is a party to the suit. (*Finch's Law,* 19. 4 *Co. R.* 118. *Wingate's Maxims,* 170.) The current of New York decisions is, that neither a judge or any other judicial officer, can sit where he is a party or interested, even in a case where he is a nominal party, as a public officer. (28 *Barb.* 503. 17 *id.* 410, 414. 41 *id.* 200, *and cases cited.*) It has been several times held that the chancellor might hear a case where his relatives were parties, if there were no other court where their rights could be determined, notwithstanding the statute. (*In the matter of the petition of Leefe and wife,* 2 *Barb. Ch.* 39. *Id.* 331.) But it has never been held, I apprehend, that he could sit in his own case. The decisions in the cases cited, when the chancellor heard cases contrary to the statute, was based not solely on the ground of necessity, but upon the constitutional provision giving exclusive appellate power to the chancellor in those cases; and he

says: "The constitution must therefore control; as that is the paramount law." No such reason exists in this case. The constitution does not confer the power on the county judge in this instance; it is the legislature which says: "you shall have jurisdiction of this matter, but you must not sit where you are a party." These decisions, however, have not met with approval. Hurlburt, J., in *Oakley* v. *Aspinwall*, (3 *N. Y.* 550,) says: "It has been held by some modern judges to excuse them from determining upon matters and causes in which their relatives were parties or were interested. But it seems to me far better that causes as to which the sole judge of a court is presumed to be biased should remain undetermined until the legislature should provide an appropriate tribunal." (*See also Wash. Ins. Co.* v. *Price*, 1 *Hopkin's Ch.* 1.) The same principle applies to special preceedings as applies to cases; indeed most of the cases are in special proceedings when the law has been applied.

But the county judge is not the only officer before whom these proceedings might have been had. Laws of of 1869, chapter 907, provides that application to bond the town may be made to the county judge of the county in which the corporation (railroad) is situated. No provision is made in the bill for application to any other officer. But section 30, subdivision 13 of the Code, provides that he may certify all actions or proceedings to the Supreme Court when he is thus disqualified from acting. It cannot be said that this only applies to proceedings in court; it must and does apply to all proceedings cognizable by the county judge, whether before him as county judge, or as judge of the county court.

XII. The writ of *certiorari* should be sustained, and the proceedings and judgment of the county judge should be reversed and set aside, and declared null and void, with costs.

---

---

*H. W. Merrill*, in person, and for respondents.

*A. B. Olmstead*, in person, and for respondents.

*Batcheller & Hill*, for E. R. Stevens, and petitioners and railroad company.

I. In this town bonding proceeding the assessment roll is evidence of everything contained in it, and is as conclusive as is a regular judgment, upon the parties thereto. It is conclusive as to the number of taxpayers of the town; conclusive as to the aggregate of the taxable property in the town; conclusive that each and every person named on the tax list is a taxpayer of the town, and owns or represents the kind and amount of property set opposite his or her name, respectively, and the assessed value thereof; conclusive that each and every person named upon the roll is rightfully assessed in the capacity therein specified, whether in his own right or in his representative character, as executor, administrator, trustee or guardian; and conclusive that the persons named on the roll as executors, administrators, trustees or guardians, are such. The assessment roll is conclusive evidence that those named on the roll under the head of corporations, are corporations of the kind and character therein specified or indicated, and as such, are taxpayers of the town, and liable to be assessed in the amount set opposite each, respectively.

The assessment roll is not only thus affirmatively conclusive, but it is negatively so. For example: it is conclusive that any and every person in the town not named on it is not a taxpayer, and that no person is a taxpayer of the town in a capacity or character different from that specified on the roll. For example: a person who is assessed in his individual capacity only, is not a taxpayer in any representative capacity, and *vice versa*. And where a person is named and assessed on the roll in his individual and in a representative capacity, the roll is conclusive

as to the amount set opposite his name in each capacity. The assessment roll is thus conclusive as evidence, not only on account of the high character of the document itself, made, as it is, under oath, and by regularly constituted officers, clothed with plenary and exclusive powers, but it is made so by the provisions of the general town bonding law itself. (*Laws of* 1869, *ch.* 907, §§ 1, 2.) This act makes the roll the basis of the determination of the county judge. It is documentary evidence, to which full faith and credit is to be given, and conclusive upon all parties to the proceedings had under said act, and cannot be added to, varied or contradicted by any evidence, *aliunde.*

II. It was unnecessary, under the provisions of this town bonding act, to give evidence, at the hearing before the county judge, proving that the petitioners signed the petition. The act does not require it to be done. The 2d section makes it the duty of the judge, at the time and place named in the published notice, to proceed to take proof as to the allegations in the petition. The allegations of this petition requiring proof were, 1st. That the Saratoga, Schuylerville and Hoosac Tunnel Railroad Company was a railroad corporation. 2d. That the petitioners were each taxpayers of the town of Saratoga Springs. 3d. That their names, respectively, appeared upon the last preceding assessment roll of said town, to wit, the assessment roll of 1869, as owning or representing a majority of the taxable property of said town. And 4th. That they were a majority in number of the taxpayers on said roll. These are all the allegations of the petition requiring proof, the residue of it being the prayer of the petitioners. It will be perceived that signing the petition is not an allegation requiring proof. And that no proof of the signatures to the petition is contemplated 'or required by the law, is pretty evident from the other parts of the second section of the act, for it goes on to say that "if it shall satisfac-

torily appear to him (the judge) that the said petitioners," &c. "do represent a majority of the taxpayers of said town as shown by the last preceding tax list or assessment roll, and do represent a majority of the taxable property upon said list or roll, he shall so adjudge and determine, and cause the same to be entered of record," and the next section simply provides for the appointment of commissioners by the judge. When these things are done, the whole duty of the county judge is performed. If the legislature had deemed it necessary or important to require the county judge to take proof of the signature of each petitioner, they would have said so expressly. Not having done so, the genuineness of the signatures of the petitioners is to be presumed.

III. At the close of the proofs before the county judge, the counsel for Samuel Freeman, one of the relators, made certain objections in writing. The 5th objection is in these words: "It does not appear that the pretended signers of said petition signed the same with their own proper signature, or where otherwise signed, that the persons signing had authority from the owner of the property." Now we submit that this objection is entirely too general and indefinite for any purpose. No one of the 900 names on the petition was pointed out to which the objection was applicable. The counsel for the petitioners could not know what names were objected to, and what not, nor could the judge; and it is a well settled rule that such general and indefinite objections will not be entertained in the court of review, and if there ever was a case where this rule should be adhered to and enforced, this is emphatically that case. If they had put their finger on the name or names of any of the petitioners, and said our objection here applies, an opportunity would have been given to the counsel for the petitioners to supply such proof.

Another answer to this objection is, that no proof of the signatures of the petitioners was necessary, and that their

genuineness is presumed. Just one month after the determination of the county judge was made and signed, and twenty-three days after this determination, together with the petition and all the orders and testimony, had been filed and entered of record in the clerk's office, the relators, with the aid of counsel, were enabled to select out of the whole 900 names that appeared on the petition, thirteen names, which they ventured specifically to point out, and as to which they at that late day raised objections. These names were evidently all they could find, and as to all the rest (over 880) there were none to which they could find any objections. These thirteen names are as follows, as set down by relators:

1. John C. Shepherd, for Shepherd children.

2. Consent of the Congregational church, signed by S. B. Bushnell, president, L. S. Packard, clerk.

3. Eureka Spring Company, A. R. Dyett, president and trustee; Jacob Secord, trustee; H. Merrion, trustee.

4. S. B. Terwilliger, Baptist church; Waterbury, trustee, Baptist church.

5. William M. Weibelzdle, by Julia M. Weibelzdle, administratrix.

6. E. R. Waterbury, executor of C. A. Burnett estate.

7. Red Spring Company.

8. R. Hathaway, administrator of estate of Nelson Burnham.

9. Saratoga A Spring Company.

10. Elvira Putnam, administratrix.

11. George S. Batcheller, executor and guardian, Cook estate.

12. John C. Hulbert; John C. Hulbert, guardian.

13. John Westfall, W. M. S.

We submit the following comments respecting these thirteen names: The first name, "John C. Shepherd, for Shepherd children," is nowhere on the assessment roll; the term, Shepherd children, is on the roll, but John C.

Shepherd is not. He, not being a taxpayer on the tax list, was not counted in as one of the taxpaying petitioners; nor was the term, Shepherd children, counted; nor was any part of the $2000 assessed to Shepherd children reckoned as any part of the taxable property represented by the taxpaying petitioners. This is true in point of fact; and such is the presumption to be drawn from the facts. There is no evidence that the county judge did count this as one of the names of the taxpayers on the petition, or that he reckoned in the $2000. He did, in fact, throw both out as above stated. And we respectfully insist that the relators must affirmatively show that this name was counted in, and the $2000 allowed by the judge, before they can predicate error on it. This they have not done, and cannot do.

The second name in this list of thirteen is "Consent of the Congregational church." The words, "Congregational church," are not on the petition, nor are they on the assessment roll. And it is not very probable the judge counted any name which was not on either the petition or roll. This technical answer is entirely allowable to a technical objection. Upon the merits, it is true that the name, "Congregational Society," is on the tax list, and the name, "First Congregational Society," is on the petition, and was placed there by authority of the board of trustees, under the corporate seal of the society. Under these facts, we insist that the Congregational Society was rightfully a petitioner, and that the same was placed on the petition by unquestionable authority, and comes directly within the letter, spirit and intent of section 1, chapter 907, of the Laws of 1869. This section says that "any solvent moneyed, manufacturing, or other corporation or company, formed under the laws of this State, and being assessed on real or personal property therein, shall have all the rights and privileges under this act, so far as property representation is concerned, as other taxpayers." "And the board of directors or trustees of any such corporation or com-

pany may apply to the county judge, by petition, in the same manner as herein provided for other taxpayers." This language is clear and unmistakable. It embraces all corporations having property on which they are assessed, and enables them to petition the same as any other taxpayers. It is an enabling statute, and, as such, is to be liberally construed, and we respectfully submit that it cannot be so construed as to exclude religious corporations, without a manifest violation of both its letter and spirit.

The third name specified is the "Eureka Spring Company." There is direct evidence that this name was not counted, nor was the $5000, set opposite this name on the assessment roll, reckoned in, or made any part of the majority of the taxable property represented by the petitioners, but was expressly excepted out. On reviewing the subject, we are of the opinion that this company should have been counted as one petitioner, and the $5000 reckoned in. The company was on the tax list. The president and trustees signed the petition. It was signed in this form, "Eureka Spring Company, A. P. Dyett, president and trustee; Mary Girard, Cyntha A. Childs, Mary Gierdz; Jacob Pecase, trustee Eureka Spring Company, H. Morrison, trustee Eureka Spring Company. It was a corporation, and was brought within the spirit and intent of the provision contained in the first section of the town bonding act, allowing corporations to become petitioners. If this be so, it was an error to reject it, but it was an error of which the relators certainly cannot complain.

The fourth name in this list is set down by the relators as follows:

"S. B. Terwilliger, Baptist church."

"Waterbury, trustee, Baptist church."

On the petition, it is thus set down:

"S. B. Terwilliger, ⎫
"W. Waterbury, ⎬ Baptist church."
⎭

It is on the assessment roll, "Baptist church," $740.

The signatures were proved. The "Baptist church" was a religious corporation. It was on the assessment roll, had property, for which it was assessed, was properly placed on the petition, and was a competent petitioner under the act. We refer to our observations respecting the Congregational Society as applicable to the Baptist church. Whether the judge reckoned in the $740 assessed to this Baptist church, or not, does not appear from his return; and we insist that, as a matter of law, the relators must make it to affirmatively appear on the record that this "Baptist church" was counted in as one making up the majority of petitioners, and that this sum of $740 was reckoned in and made a part of the majority of the taxable property, before they can predicate error. They cannot base error upon a mere assumption of a fact which does not appear on the record. Every presumption is in favor of the correctness of the determination of the county judge.

The fifth name on this list is set down by the relators as follows: "William M. Weibelzdle by Julia M. Weibelzdle, administratrix." This name is not on the petition. The only name on the petition which approximates to it in spelling or substance is "Mrs. Wm. M. Weibelzahl, administratrix." And it is quite impossible for this court to determine whether the two names mean one and the same person, or two different persons. Besides, the marked difference in the autography of the sirnames, the words "William M. Weibelzdle by Julia" do not appear in the petition, and the natural inference is that the relators have got some other name, from some source or other. On the assessment roll there is a name as follows: "Weibelzahl, Mrs. Wm., land, $460." This is the same name as that in the petition, except that the word "administratrix" is subjoined. It is pretty evident that the name in the roll and that in the petition applied to, and meant, one and the same person, and that as she could not be assessed for land as administratrix, the addition of that

term to her name was mere surplusage, or simply *descriptio personæ;* if the judge so found, from the evidence, he undoubtedly gave effect to the intent of the parties. But it does not appear what he did do respecting it. The only thing manifest is, that there was and really could not be any error about it affecting the merits of the case, or his final determination of the matter.

The sixth name is set down in the affidavit of the relators as follows: "E. R. Waterbury, executor of C. A. Burnett estate." This name also does not appear on the petition, except as follows: "E. R. Waterbury, executor." "E. R. Waterbury, executor" does not appear on the tax list, and of course no account of his name as executor was made. He does appear in his individual capacity on the tax list and petition, and as such was undoubtedly reckoned in, and not otherwise.

The seventh name in this list, mentioned in the affidavit of the relators, is the "Red Spring Company." The name Red Spring Co. does appear in the petition, and also on the roll, and is assessed $560. The name was proved, but what the judge did with it does not appear. It is to be presumed, however, that he made such a disposition of it as the evidence warranted. On the hearing, no specific objection to it was made by the relators' counsel. If any objection had been made, proof might have been supplied, if it was defective. It was not a corporation.

The eighth name is stated, in the affidavit of the relators, as follows: "R. Hathaway, administrator, estate of Nelson Burnham." This name does not appear on the petition or tax list.

The ninth name specified in the relators' affidavit is Saratoga A. Spring Company. This name appears on the petition, but there was no sufficient proof that it was placed there by competent authority, and it was not claimed by the counsel for the petitioners, on the hearing, as one of the petitioners, but was in fact disclaimed. The testimany

of George S. Batcheller and of W. W. Worden, introduced on behalf of the petitioners, shows that it was excepted out, and not. counted in among the names of the petitioners, nor was the amount, $700, assessed to it, reckoned in. It was wholly rejected. And the affidavit of the relators, that it and the Eureka Spring Co. were "included in the aggregate to obtain a majority of the taxable property of the town," was, to say the very least of it, quite inexact.

The tenth name is Elvira Putnam, administratrix. Her name does appear on the tax list, in her individual capacity, but not as administratrix, and it is to be presumed that she was not counted as a taxpayer petitioner, certainly not as administratrix.

The eleventh name is that of " George S. Batcheller, executor and guardian of Cook estate." This name, George S. Batcheller, appears on the petition, assessment $5275. He also appears on the assessment roll as follows: " George S. Batcheller, guardian," assessment, "$6666." It also appeared in evidence that he represented the Cook estate as guardian and executor; that he was the sole executor of the estate, with power of sale of real estate under the will; that nearly the whole estate is personal property, and that all of the real estate is located in the town of Saratoga Springs, except a small mission chapel, built by Mr. Cook, and located at Ballston Spa, N. Y. On the trial no specific objection was made to the allowance of the assessment against him as guardian. But after the evidence was closed, the contestants' counsel made a general objection that it did not appear that such persons as signed said petition as executors, guardians, or other trustees, had any power to sign, so as to bind their *cestuis que trust* or their estate. This objection is repeated by the relators. The answers to this objection are two, at least. The town bonding act itself gives them this

The People *v.* Hulbert.

power. The language of the first section of the act is express. It says: "Whenever a majority of the taxpayers of any municipal corporation in this State, whose names appear upon the last preceding tax list or roll of said corporation as owning or representing a majority of the taxable property in the corporate limits of such corporation, shall make application to the county judge 'by petition verified, setting forth,' &c., it shall be the duty of said county judge to order," &c. (*Laws of* 1869, *ch.* 907, § 1.) It will be observed that the language of this section embraces all taxpayers whose names are on the last assessment roll of the town, and excludes none; and to make the intent to include all, still more certain, it says all taxpayers "owning or representing" a majority of the taxable property, evidently intending to clothe all taxpayers, as well those owning taxable property in their own right, as those who represent the taxable property in the right of others, such as guardians, executors and other trustees, with the power to petition for the bonding of the town. Persons thus taxed and representing property are placed, by this act, upon the same level with those who own and are assessed in their own right. It gives those representing property as guardians, trustees and executors, authority to sign a bonding petition, if they, in the exercise of their judgment, see fit to exercise it. We maintain that a guardian or trustee, who represents taxable property in the town, and who is placed on the assessment roll as such a taxpayer, has the right, independent of said act, to sign such a petition, provided he, in the exercise of a sound discretion, deems it expedient and for the benefit of the estate he represents, to do so. And if he does so sign, the same is effective and binding, so far as the bonding proceedings and the public are concerned; and it does not lay in the mouth of an entire stranger or any number of strangers to such estate, who have no interest in or control over

it, to object to such signing. Such guardian or trustee is only answerable for such an exercise of his discretionary power when he is called upon by his ward to account for his acts and doings in the regularly constituted tribunals having jurisdiction in such matters. He is then, and then only, responsible for the execution of his trust. We know of no law which requires or allows the relators in this case to sit in judgment over the different guardians and trustees of this town.

When the guardians, executors and trustees, who have signed this petition, shall be called into court by their wards and principals, to account for their acts, they will cheerfully respond, and it may turn out that their acts and efforts in this behalf will prove to be so beneficial to their estates that they will cheerfully and thankfully sanction and ratify the same. We believe that will be the case in every instance. But if it shall eventuate otherwise, these guardians and trustees will alone be held responsible.

The twelfth name is "John C. Hulbert; John C. Hulbert guardian." His name appears on the petition and also on the assessment roll. He is assessed in his own right $10,725, and as guardian $2000. The same points and observations made respecting George S. Batcheller, guardian, are applicable to John C. Hulbert, guardian, and we desire it to be so considered. We wish to add the single remark, that the fact of his signing said petition, both in his individual and representative capacity, shows how thorough were his convictions as to his right and power to sign the same.

The thirteenth and last name of this list of thirteen is, as stated by the relators, "John Westfall, W. M. S." The name "John Westfall" is on the petition, and is also on the assessment roll. Assessment $360. William M. Searing testified: "Mr. John Westfall authorized me to sign his name to the petition, and I signed John Westfall, as

appears on said petition." Mr. Searing put the letters " W. M. S." in pencil, to the name, the same being the initials of his own name, simply as a memorandum to show how the name was placed on the petition, and to aid in getting proofs. We perceive no objection to John Westfall as a petitioner.

These are all the names that the relators have pointed out as in their opinion objectionable. Had they found others they most certainly would have mentioned them; and the fact that they have not done so, is of itself, a tacit admission by them that there is no objection worth mentioning to any others of the 900 names on the petition. The facts and proofs in the case go to show that there were no others of the petitioners to whom any objections were or could be made. These, aside from what can be even plausibly claimed as to the thirteen specified names, were a large majority of the taxpayers on the tax list, and owned or represented a large majority of the taxable property of the town. And it would not change the result in the least, if everything should be conceded to the relators which they can, with any show of reason or argument, claim as to these thirteen names, in respect to the amount of property represented by the petitioners, and the number of petitioners.

The court will, of course, understand that we do not, for one moment, or for any purpose, admit by this, that the objections of the relators are valid as to any of these thirteen names; on the contrary, we insist, as we have before endeavored to show, that the objections as to them are untenable; and we also claim that not one dollar can or ought to be deducted from the said $30,309 majority; and that the closest examination and figuring that the facts of the case will admit of, will tend materially to increase that majority rather than diminish it, and will also increase the majority of names instead of diminishing them.

IV. The act under which these proceedings were had, (*Laws of* 1869, *ch.* 907,) is constitutional and valid. Precisely the same questions have repeatedly been passed upon by the Court of Appeals, and the law sustained. (*Bank of Rome* v. *Village of Rome,* 18 *N. Y.* 38. *Starin* v. *The town of Genoa,* 23 *id.* 439, 456.)

V. The county judge had jurisdiction of the matter. 1. He was not disqualified on account of interest, from entertaining the proceedings. The statute (which is declaratory of the common law) disqualifying a judge from acting in any case, reads: "No judge of any court can sit as such in any cause to which he is a party, or in which he is interested." This contemplates a judicial cause, where there is an action between parties, and only applies to judges of courts. (*Bank of Lansingburgh* v. *McKie,* 7 *How.* 369. *The People* v. *Wheeler,* 21 *N. Y.* 86.) This was not an action in a court; it was simply and purely a statutory proceeding before John C. Hulbert. His interest was too remote and contingent to disqualify him, even if he had been sitting in court on the trial of an action at law. He undoubtedly felt an interest in the question, but he had no direct pecuniary interest in the event of the proceeding, such as to render him, as judge, disqualified to sit. But he did not sit as judge. And as to his being a party to the proceeding, he was a party to it in about the same sense that he is a party to every action and proceeding prosecuted or defended in the name of the people of the State of New York. 2. But he did not sit judicially, as judge, in this proceeding, and hence the disqualifying statute did not apply to him, either in point of interest or as a party. The duties of county judge, under this statute, are not to dispense justice between man and man, but an act of public administration, though requiring the exercise of judgment, and are analogous to the administrative duties of the assessors of towns, commissioners of highways, town auditors, inspectors of elec-

tions and county canvassers, &c. In the case of assessors, they have some judicial duties to perform in passing upon the value of real and personal property of the town in which they are designated to act, not only in relation to the estates of others, but of their own and their kindred. Commissioners of highways also have similar judicial duties to perform; they must pass upon all applications for the laying out or the discontinuing of highways over the lands belonging to themselves as well as to others; they must also "ascertain, estimate and assess the highway labor to be performed in their town," not only upon the persons and property of others in the town, but themselves, thus actually sitting in judgment upon their own rights and direct interest; and in the case of town auditors, they sit in judgment upon the claims presented against the town, decide upon the legality of the same, and the amount to be allowed, and until a recent date, passed upon their own accounts; they being the only tribunal to examine and pass upon the same. In the case of inspectors of election, they determine the qualification of voters, and decide upon their own qualifications, as well as upon others; they also determine the question who is elected, by counting their own ballots with those cast by others; and who ever thought for a moment to question their right to do so? The judicial duties of the assessor, commissioner of highways, town auditor and inspectors of election, here enumerated, are greater, and more directly affect the parties in their individual interest, than the case before us. In this case the counsel for the relators say the county judge signed the petition directed to himself for his own determination. In reply, we say that the town auditors present their own account to themselves (or in other words petition themselves) to be acted upon and by them determined; the assessors petition themselves to have the values of their own estates determined; and the inspector of election who may be one of the candidates

being voted for, for office, votes for himself; and he canvasses the ballots, and from such canvass determines his own election or defeat. What farther, or in what more direct manner, does the county judge, in the case at bar, act in a judicial capacity upon his own petition, or sit in judgment upon his own rights. If his name had not appeared upon the petition, his duty would have been the same in relation to his representation of property upon the assessment roll; his name, and amount of property then appearing, would have been by him counted in the aggregate against the proposed bonding, instead of for the same, which is but a ministerial act, instead of a judicial one; so that in any event he would have been a party to the proceeding. Suppose that the legislature had enacted that the question should have been determined by ballot, those voting only whose names appeared upon the last assessment roll as taxpayers in said town, and the county judge was designated as the person to determine who were qualified to vote, and canvass such votes and determine the result. Could it be maintained for a moment, that he, in common with the rest, would not be qualified to cast his ballot in favor of, or against, the proposition, and if he did, would render the proceeding void, in direct opposition to the power the statute expressly conferred upon him.

In the case of the *Bank of Rome* v. *Village of Rome*, (18 *N. Y.* 38,) the question was determined by ballot. The president and trustees were to canvass the vote and certify the result to the clerk of the county. No one suggested that they were not qualified to act as such canvassers, or to cast their ballot for or against the project. Does it disqualify a person from acting as such canvasser because he acts as county judge in other and different proceedings? When the legislature designated the county judge as the person before whom the proceedings should be had, it used the term only as a description of a person, and not

as a court or the judge of a court. 3. The effect of the action of the county judge, under the provisions of this act, is that the town determined to exercise a power which the legislature granted them, which they did not possess before. (23 *N. Y.* 446.) It determines an event only, and in no way determines any pecuniary question in which he is interested; it determines only a question of fact, that the towns may exercise the right which has been conferred upon them ; in which question every other person residing within the corporation is equally interested. The prohibition of the Revised Statutes does not extend to cases where the interest is simply in some question of law; the statute stops short of that. (*The People* v. *Edmonds,* 15 *Barb.* 530.) 4. In the statute under discussion, jurisdiction of the matter is conferred exclusively upon one person—the county judge. The disqualifying statute does not apply to a judge of the court having exclusive jurisdiction of the matter. (17 *Barb.* 424. 5 *Paige,* 489. 2 *Barb. Ch.* 38.) 5. The disability of the judge of the court to sit in a cause in which he is interested, is statutory, and not constitutional; there is no prohibition of the legislature from conferring the right upon any judge to sit in a cause in which he is interested. 6. We submit that the duties to be performed by the judge under this' town bonding act are ministerial, and not strictly judicial in their character. At most they were only semi-judicial. The questions for him to pass upon were matters of fact, not questions of law. He simply determined the three facts, whether the petitioners were taxpayers of the town, and whether they were a majority of the taxpayers, and owned or represented a majority of the taxable property of the town. One of these facts was to be determined by an inspection of the petition and the assessment roll, and the other two by adding up and subtracting names, and adding up the sums assessed on the roll to the petitioners, and subtracting the amount from the whole amount of

the taxable property of the town as set down on the roll. These duties do not partake as much of a judicial nature as do the duties of assessors, town auditors, highway commissioners and inspectors of elections. These duties might all have been conferred upon and performed by the supervisor or assessor of the town, or by any other man of the county of ordinary integrity and ability, provided the legislature had so directed. So that it will be perceived that there is not anything in the nature of the duties to be performed which rendered it necessary for the legislature to designate the county judge to perform them. The legislature named the county judge, not as a judge, nor because he was judge, but simply as a fit and proper person to discharge a ministerial, or at most only a semi-judicial, duty. 7. The act does not contemplate that there can be any disability of the county judge, for it makes no provision whereby the petitioners of the town where the judge resides, can apply to any other judge, person, officer or tribunal; and to hold the judge disqualified to act, would effectually prevent the taxpayers of the town from availing themselves of the benefits of the law. It would work a denial of justice to the town of Saratoga Springs; and not only to the taxpayers of that town, but to the taxpayers of every town of the State to which the acts extends, and in which a county judge resides. Such could not have been the intention of the legislature, and we are satisfied that such is not the legal effect of this enactment of theirs, and that it properly cannot, and ought not to, have any such construction put upon it by the court.

PARKER, J. On the 31st day of August, 1870, certain taxpayers of the town of Saratoga Springs, applied, by petition, to the defendant Hulbert, county judge of Saratoga county, (under the act of May 18th, 1869, chapter 907, permitting municipal corporations to aid in the con-

struction of railroads,) signifying their desire that the bonds of said town might be created and issued to the amount of $100,000, and that such bonds or their proceeds might be invested in the capital stock of the Saratoga, Schuylerville and Hoosac Tunnel Railroad Company, for the purpose of aiding said company in the construction of its railroad.

The petition sets forth the fact of the organization of said company; that each of the petitioners is a taxpayer of said town, whose name appears as such upon the last assessment roll of said town; that said petitioners are, in the aggregate, a majority in number of the taxpayers on the said assessment roll, and own or represent a majority of the taxable property within the limits of the said town. The petition was duly verified by one of the petitioners. Upon the presentation of the petition, on the day aforesaid, the county judge made an order requiring notice to be forthwith published in a newspaper published in said county, setting forth that on the 20th day of September, 1870, at 10 o'clock A. M., at his office in Saratoga Springs, he would proceed to take proof of the facts set forth in the petition, as to the number of taxpayers joining in said petition, and as to the amount of taxable property represented by them. At the time and place so appointed, he did attend, and the petitioners, by their counsel, also appeared, and one of the relators also appeared by counsel, to oppose said application. Proofs of the publication of the notice, as ordered, and of the facts set forth in the petition, were thereupon taken; and after hearing the proofs and the objections made thereto, by the relators' counsel, the county judge appointed and commissioned Henry W. Merrill, Aaron B. Olmstead and Edward R. Stevens, commissioners, with full power and authority to create and issue the bonds of said town of Saratoga Springs. The relators sued out a *certiorari*, to bring the proceedings before this court for re-

view, and the case now stands before us for review upon return to the writ.

The right to appoint commissioners to issue the bonds of a town, to aid in the construction of a railroad, under the said act, depends upon the fact of a majority in number of the taxpayers of the town, owning or representing a majority in amount of the taxable property within the limits of the town, petitioning the county judge for that purpose. The last assessment roll of the town is made the criterion for ascertaining such fact. The question to be determined, then, by the county judge, was, whether or not the petition presented to him answered this requirement of the statute.

It is not denied by the relators, that the names upon the petition were a majority in number of those upon the assessment roll; nor is it denied that the persons whose names are signed to the petition own or represent a majority, in amount, of the taxable property within the town; but, it is stated that a portion of the names upon the petition are signed as trustees, executors, administrators and guardians, respectively; also that the name of John C. Hulbert, county judge, before whom the proceeding was had, was one of the names upon the petition; that it did not appear that such trustees, executors, administrators and guardians, had authority to sign the petition; and it is insisted that those, together with the name of the county judge, should be excluded; and that if they are so excluded, the remaining names will not represent a majority, in amount, of the taxable property of the town. It appears, from the evidence produced to the county judge, at the hearing, that the whole number of taxpayers, whose names appear upon the last assessment roll of the town, was 1529, and that of those 830 are signed to the petition; that the aggregate amount of assessments on the roll was $2,318,170, of which amount the sum of $1,189,394 was assessed against the petitioners. Half the number of

taxpayers is 764½, so that there is a majority of 65 in the number of the petitioners. Half the amount of the assessments on the roll is $1,159,085. There is, then, a majority in amount, represented by the names on the petition, of $30,309. The relators claim that the aggregate sum of $34,551 of the amount represented by the petitioners, is represented by trustees, &c., and by the county judge, as above stated, and that this sum being deducted, leaves the amount represented by the petitioners $4242 less than half the amount upon the assessment roll, so that the petitioners fail of a majority, and do not therefore come within the statute.

In regard to a portion of the names objected to, I think the objection well taken, inasmuch as the name signed to the petition as executor or administrator, does not appear on the assessment roll, where the assessment is to the "estate" of the testator or intestate, and the name of the person signing the petition as executor or administrator is omitted. In such cases, it not appearing to the county judge that the signers are in fact what they assume to be, their signatures should have been, and unless they are necessary to make up the requisite majority, in number and amount, we are to assume, were excluded by the county judge. Those objected to, and in regard to whom I think the objection sustainable, are J. C. Shepherd, for Shepherd children; Terwilliger and Waterbury, for Baptist church; Mrs. Weibelzall, administratrix; Waterbury, executor of Buell's estate; Holloway, administrator of Burnham's estate; Elvira Putnam, executrix of W. Putnam's estate; and B. Thrasher, guardian of S. H. Barrett's estate. These, together, represent the sum of $5760. The residue of the relators' list of names objected to, I think, are properly on the petition. The first of these is George S. Batcheller, executor and guardian of the Cook estate. This name appears on the roll in this form: "George S. Batcheller, guardian." He was called as a witness, and

testified that he was sole executor of the Cook estate, which was nearly all personal property. Being assessed on the roll as guardian, he had the right to sign the petition as guardian, which he did, adding the estate which he represented. The act authorizes persons whose names appear on the last assessment roll as owning or *representing* taxable property, to become petitioners. The language is: "Whenever a majority of the taxpayers of any municipal corporation in this State, whose names appear upon the last preceding tax list or assessment roll of said corporation, as owning or *representing* a majority of the taxable property in the corporate limits of such corporation, shall make application to the county judge of the county in which such corporation is situated, by *petition*, verified," &c. It is not necessary that the petitioners should be owners of the property for which they are taxed. If they *represent* it in any capacity, and are assessed on the tax list as so representing it, then they are taxpayers, and may become petitioners. George S. Batcheller, therefore, is entitled to be counted.

Another of the residue of the relators' list of names objected to is First Congregational Society. In regard to corporations, the act provides as follows: "And any solvent moneyed, manufacturing, or other corporation or company, formed under the laws of this State, and being assessed on real or personal property therein, shall have all the rights and privileges under this act, so far as property represented is concerned, as other taxpayers, and the board of directors or trustees of any such corporation or company, may apply to the county judge, by petition, in the same manner as herein provided for other taxpayers." (§ 1 *of the act.*) Now this Congregational Society is assessed on the last assessment roll, and it was proved before the county judge that its board of trustees, by resolution, authorized the signing of the petition in its name. I have no doubt that

The People *v.* Hulbert.

it was entitled to be counted by the county judge, as a proper petitioner.

And then comes the relators' list of names to which objection is taken—that of John C. Hulbert, county judge. His name appears on the last assessment roll, both in his individual capacity and as guardian, and it is signed to the petition in both capacities. The relators insist, not only that the sum which his name, as guardian, represents, cannot be regarded, but that by becoming a petitioner, he has deprived himself of all jurisdiction in the matter, and that the proceedings before him are, for that reason, altogether void. What has been already said in regard to Batcheller, applies to Hulbert, considered merely as guardian.

The more important question is, by becoming a petitioner, did he become incompetent to take cognizance of the proceeding? The relators' counsel bases his allegation of want of jurisdiction in the county judge upon the ground that by signing the petition he became an interested party to the proceedings, and was therefore deciding his own case. It is necessary to inquire, therefore, whether by signing the petition he did become any more interested in the question to be decided by him than he would have been if he had not signed it. The question was one affecting the pecuniary interests of every taxpayer in the town, whether petitioners or not, to wit: whether or not the town should be authorized to issue its bonds for $100,000 in aid of the railroad. If he had not signed the petition, it is undeniable that he would have been competent, and yet he would have been, in that case, interested no less than he is now. The signing of the petition is, in effect, no more than a mode of giving the consent of the taxpayer to the issuing of the bonds. The bonds cannot be issued except by the vote of a majority of the taxpayers. The signing of the petition is a mode of taking the vote. The county judge then stands in the posi-

tion of a taxpayer having voted for the issuing of the bonds. This, I think, does not disqualify him from counting the votes, and ascertainig whether a majority, in number and amount of taxable property represented, has been given for the bonding of the town, or not. If such a majority has been given, the county judge has no power in the premises, except to obey the statute, which makes it his duty, in such case, to appoint three commissioners to issue the bonds. There is no force in the objection that the county judge was deprived of jurisdiction. (*See People* v. *Wheeler*, 21 *N. Y.* 86. *Clark's Ch.* 190, *Moak's ed. and note.*) The aggregate amount of taxable property which these names represent is $28,791, more than enough to overcome the deficiency claimed, and leave a considerable majority in amount represented by the petitioners.

The county judge having been satisfied in this case, by the proofs before him, that the petitioners were a majority of the taxpayers appearing on the last assessment roll, and represented a majority in amount, of the taxable property assessed on said roll, did so adjudge; and thereupon appointed three persons, to wit, Henry W. Merrill, Aaron B. Olmstead and Edward R. Stevens, (declared in said order to be respectively freeholders, taxpayers and residents of said town of Saratoga Springs,) commissioners to create and issue the bonds of said town to the amount of $100,000, the sum set forth in the petition. The relators' counsel objects that it does not appear that these commissioners were freeholders; and further, that one of the commissioners appointed is a stockholder and director of said railroad, and that the other two are stockholders thereof, and that therefore they are not eligible to such appointment. I do not think, upon this proceeding, it is competent for the relators to bring in question the eligibility of the persons whom the county judge selected as commissioners. No such question is made by the affidavit or complaint on which the writ of *certiorari* was issued.

Such complaint, after stating fourteen grounds on which it alleges that the proceedings before the county judge to bond the town were void, in none of which is any objection made to the commissioners, closes with a general statement, that the relators, believing the proceedings and decision of the county judge, and the *proposed proceedings* of the said commissioners, illegal and without authority, and tending to impose an illegal tax upon taxpayers of the town, ask that a *certiorari* may issue, to the end that said proceedings may be reversed, &c. And the writ does not call for any return on which the question of the eligibility of the commissioners can be examined. The return therefore fails to show anything on the subject of the eligibility of the commissioners, except that the order or judgment of the county judge states that they are freeholders, taxpayers and residents of said town. The only ground on which the relators can claim that they are stockholders or directors of the said railroad company, is that it appears incidentally, in the proofs before the county judge, that persons of the same name are such. If the question was open, this would not, under the circumstances, I think, be sufficient to warrant us now to decide that these commissioners were so connected with the railroad company; and as to their being freeholders, taxpayers and residents of the town, the statement to that effect is here, in the absence of proof to the contrary, sufficient. The learned counsel of the relators suggests that the act of the legislature, under which the proceeding was had, is unconstitutional and void. In this we cannot agree with the counsel, in the face of decisions of the Court of Appeals in the cases of the *Bank of Rome* v. *The Village of Rome,* (18 *N. Y.* 38;) *Starin* v. *The Town of Genoa,* (23 *id.* 439;) and *Gould* v. *The Town of Sterling,* (*Id.* 456.)

It is also claimed that the bonding of the town should have been based upon the assessment roll of 1870, instead of that of 1869, which was the one used in the proceed-

ing. The evidence clearly showed that at the time the proofs were taken the assessment roll of 1870 had not been completed. I think the requirements of the statute have been complied with, and that the proceedings before the county judge were regular, and his order or judgment thereupon was fully warranted, and should be affirmed. No costs can be given to either party.

MILLER, P. J., concurred.

POTTER, J., (dissenting.) The act under which these proceedings are instituted, authorized the divesting of individuals of their estates by unusual methods, not known to the common law, and not known to general provisions of the statutes. It is a proceeding by special statute authority, and in derogation of the principles of the common law. In all such cases, jurisdiction can only be obtained by the strictest observance of the statute authority; nothing can be made out by intendment. The due execution and observance of the power granted must be shown; and in such cases there is no presumption that public officers have done their duty, but every step in the proceeding must be proved to be within the powers conferred by the act. (*Sharp* v. *Speir,* 4 *Hill,* 76. *Striker* v. *Kelly,* 2 *Denio,* 323. *Doughty* v. *Hope,* 3 *id.* 594. *S. C.,* 1 *N. Y.* 79. *Adams* v. *Saratoga and Wash. R. R. Co.,* 10 *N. Y.* 330. *Cruger* v. *Dougherty, Ct. of Appeals, December term,* 1870.) I copy the following extract from an unpublished work, soon to appear : "But it must be kept in mind, however, that whenever, in pursuance of law, the property of an individual is to be divested, by these proceedings, against his will, there must be a strict compliance with all the provisions of the law, which are made for his protection and benefit. Those provisions must be regarded as in the nature of a condition precedent, which must not only be complied with before the right of the property

owner is disturbed, but the party claiming authority, under the adverse proceeding, must affirmatively show such compliance." So, too, it is equally a well settled rule of law, that where a statute requires proof to be made in any proceeding, it must be by *legal evidence;* unless from the language of the statute it is intended to be by affidavit; or where, from some qualifying language in the context, it is apparent that the legislature intended some other method of proof than the best legal evidence. (*Buffalo and State Line R. R. Co.* v. *Reynolds, 6 How. Pr.* 98. *Brown* v. *Hichman,* 9 *John.* 75, 76. *Terry* v. *Fargo,* 10 *id.* 114. *Id.* 167.) Things to be proved must be established by competent and satisfactory *legal* evidence. (1 *Greenl. Ev.,* § 1.) It has lately been decided in the Court of Appeals, "*In the matter of the application of the Rens. & Sar. R. R. Co.* v. *Davis,*" (*reported in the Albany Law Journal, No.* 57,) "that the taking of private property for public use is in derogation of private rights, and in hostility to the ordinary control of the citizen over his estate, and is not to be extended by implication. To authorize the taking of land under the right of eminent domain, the express authority must be shown." Guided by these rules in the construction of the act of 1869, (*ch.* 907,) under which these proceedings were taken, the second section of the act makes it the duty of the judge, at the time and place named in the notice, to proceed *to take proof* as to the said allegations in said petition, &c. This means *legal proof.* What were those allegations? Among other things, they are, that the petitioners are a majority of the taxpayers, or that they represent a majority of the said taxpayers, and that they desire bonds to be issued; and bonding the town and creating a liability against the town and against the taxable property to the amount of $100,000. These were the things to be proved, and proved by legal evidence. Such legal proof, I think, was not produced before the county judge, as showed that a majority of the taxpayers

and representatives of a majority of them had petitioned for the issuing of these bonds. A considerable portion of the taxable property of that municipality, to be divested, diminished, or made liable to the proposed tax or liability, belonged to infants, who were represented by guardians.

The property of infants is always, and in an especial manner, under the protection of the court, and every act calculated to affect their interests injuriously, the courts are ever jealous to regard; and whenever the court can discover any dereliction of duty on the part of guardians or trustees of infants, they will be careful to require, at least, that all the forms of law shall be observed, and they will not allow guardians or trustees to be guilty of devastation of the estates of their wards or *cestuis que trust,* or to put them at hazard. Upon the tax roll was an assessment of $2000 against "the Shepherd children." This was claimed as a part of the majority of the taxable property petitioning for the bonds. The authority for this petition is the signature of one "John C. Shepherd, for Shepherd children." No authority was proved. But it is now said that the county judge did not count this in as a part; and it is alleged that the relators must affirmatively show that he did, in order to predicate error upon it. It is charged, upon oath, that the judge did so count this assessment as a part of the petition of the majority. The *certiorari* calls upon him to make return of all acts and decisions made by him, and his return entirely omits to state whether or not he did allow the said assessment, and the petition thereon, to be counted with such majority. The burden of showing want of jurisdiction is not with the relators, but by the party claiming jurisdiction, to show it when called upon. It is not therefore with good grace that, upon such a return, the respondents should seek to cast this burden upon the relators. But, besides this, there is the evidence of Mr. Batcheller, in which he enu-

merates the names that were omitted, and this is not among the omissions. Another case is that of the Congregational church, whose name is upon the assessment roll " Congregational Society," but who petitioned for the issue of these bonds by the name of the " First Congregational Society," $9400, which was signed by Doctor L. E. Whiting, Solon B. Bushnell and Levi S. Packard, under their corporate seal, and authorized by a resolution of the board of trustees. First. There was no legal or other proof before the county judge of the existence of such a corporation as is represented by the assessment roll, tax list or signatures; and if there had been such evidence, there was no power in this board of trustees to create such a liability against the property of the corporation they represent. A religious corporation, created under the general statute, consists not of trustees alone, but of the whole members of the society. It is the society that is incorporated, not the trustees; and its members are the corporators. The trustees are only the managing agents or officers of the corporation, in charge of the temporal affairs of the society, with powers specifically conferred by the statute; but with no other powers. They cannot alien, mortgage or incumber the estate of the corporation but by permission of the court, except to mortgage for debt, under certain circumstances. (*Robertson* v. *Bullions*, 11 *N. Y.* 243.) Their powers being specified by the statute, this specification excludes all other powers; and to devastate and create liabilities is not among the specified powers. They neither proved to the judge their corporate existence, nor any power to sign such a petition. The act of 1869 confers no new power upon them. While it allows representatives of taxable property to petition, it is to be construed to mean legal representatives, especially in an act which would divest individuals or corporations of their estates. The county judge was bound to exclude this petition upon the evidence produced before him. This was

to the amount of $9400.   Before the act of 1869, so would have stood the case at common law and statute.   But it is claimed that there is an express provision in the act of 1869, that allows corporations to become petitioners.   This is true.   It permits, however, only *solvent* corporations so to petition; and the burden of proving solvency was with the petitioners.   This was necessary to confer jurisdiction upon the judge.   This was not done.   In this case the judge has presented to us the proof, but its *solvency* was *not* proved.

Another petitioner was that of the Baptist church, representing $740, set forth on the petition, " S. B. Terwilliger, W. Waterbury, Baptist church."   This authentication is still more defective than that of the Congregational church. The only evidence in this case is, that the two persons named signed the petition.   It does not appear that they were even members or trustees of this church; much less, that they were authorized to sign a petition to incumber their property.   The same remarks apply to this case as to that of the Congregational church.

Another petitioner, whose name upon the assessment roll stands as follows: " Weibelzahl, Wm., Mrs. $460." Upon the petition is the same name, with the addition at the end, "administratrix."   There is no other name on the tax list that resembles this, and the name, " as administratrix," added, is allowed to be a petitioner, with no proof that she is such administratrix; nor is it easy to see how an administratrix can vote to incumber *real estate*, which generally belongs to the heirs at law.   To entitle her to petition, she must be a legal representative of the real estate assessed.

Another petitioner, whose name was on the assessment roll was " The Red Spring Company," $560.   The return does not show by whom this petition was signed; and there is the absence of all evidence that any body was authorized to sign for this company, as well as the want

of evidence of *solvency*, in order to confer jurisdiction upon the judge.

There were several petitioners claiming to represent estates, viz., Simeon H. Barrett's estate, $600; C. Buell's estate, $600; Nelson Burnham estate, $360; Wm. Putnam estate, $1,000. There is no legal evidence in the case that the persons signing the petition legally represented these estates, or had authority to sign the petition. The name of Elvira Putnam appears upon the tax list for $200. The petition is signed by her as administratrix, without evidence of authority, or rather with the presumptive legal evidence that she possessed no authority. Among the petitioners is " Walter Barrett estate." What amount of estate this petition represented, cannot be determined, as no such name is found on the assessment roll for 1869; but adjoining, and next to two names of Barrett, is " Walter Balfour," and there is no other name upon the roll so nearly resembling it. This name represents $1500. There is either no proof to make this petition good for any amount, or if it represents an estate, there is the additional defect of proof of authority ; or if it is a clerical error, meaning " Balfour," then it is the representative of $1500. If it be neither of these, the name is not on the tax list. The burden was upon the party claiming jurisdiction from it to show this, and to show how much he represented by his petition; it may have been received for a very large amount.

There also appeared upon the list of taxable estates the name of George S. Batcheller, guardian, $6666. In this case Mr. Batcheller, being sworn, proved himself to be guardian of the Cook estate, but did not offer any evidence of his authority to incumber the estate of his ward or to commit devastation of it. He had no authority at common law, or by statute, unless the statute of 1869 can be stretched to authorize the estates of his ward to be thus divested, which, as we have already stated, is not the rule by which such statutes are to be construed. Had he ap-

plied to the court for permission so to incumber it, it would have been refused. The same remark will apply to the petition of "John C. Hulbert, guardian," $2000; to which it may be added, that in the latter case there was no evidence of the existence of guardianship, nor of the name of the estate or persons for whom he was guardian. The name of D. B. Harrington was also included, who was a petitioner to the amount of $6000. This was also proved before the judge, and by the testimony of Mr. Batcheller. His petition was not excepted from the amount estimated as a part of the majority. The name of D. B. Harrington is not upon the assessment roll presented before us, nor any name that resembles it, representing any such sum.

The taxable value of the property of the town is, by the
assessment roll, $2,318,170; one half of this is $1,159,085

The petitioners allowed by the county judge
seem to be . . . . . . . . . . . . . 1,189,394

Making a majority upon the petitions of . . 30,304

The errors above pointed out, exclusive of the
petition of Walter Barrett, the amount of
which does not appear, is . . . . . . . 30,586

Falling short of a majority . . . . . . . 177

But adding Walter Barrett, upon the assump-
tion of a clerical error in his name . . . . 1,500

There is a failure of a majority by . . . . 1,677

If I am right in these views, we need not discuss the other questions in the case. It is a question of jurisdiction. Jurisdiction was questioned; the writ called upon the actors to show their authority; the strictest construction of the statute was demanded.

I think jurisdiction has not been shown, and that the proceedings should be set aside.

Order and judgment of the county judge affirmed, without costs to either party.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, April 4, 1871. *Miller*, P. J., and *Potter* and *Parker*, Justices.]