## JENCKS *vs.* SMITH.

Where A occupied land under H, and by the terms of their agreement the grass belonged to A; *held*, that A might transfer such grass, while yet growing, by a personal mortgage.

Where upon a trial there is opportunity for objection, and the party whose duty it is to object, remains silent, all reasonable intendments will be made, in a Court of Review, to uphold the judgment.

The defendant, in a Justices' Court, claimed the property by virtue of a personal mortgage, which was read in evidence without objection. It also appeared that the mortgage had been filed; but the return of the Justice did not shew that there was any evidence that such filing was in the town where the mortgagor resided, or where the property was situated, as required by the statute, (*Laws of* 1833, *chap.* 279;) nor did it appear, from the return, that the plaintiff, who claimed the property as purchaser under an execution against the mortgagor, made any objection on the ground of such defect in the evidence; *held,* that such an objection could not be taken in the Court of Common Pleas on *certiorari.*

On error from the Supreme Court. Smith sued Jencks before a Justice of the Peace of the County of Madison, and declared in trespass for taking a quantity of hay. The defendant pleaded the general issue, and gave notice that he would prove the hay belonged to him by virtue of a chattel mortgage, executed upon the same by one Philip Arnold. On the trial the plaintiff claimed the hay by virtue of a sale to him under an execution, issued from a Justices' Court, against the said Philip Arnold. Arnold cut the hay upon land which he occupied under one Hunt. The hay was cut and stacked on Saturday, and on the Monday following the above execution was levied upon it, and the plaintiff bought it at the constable's sale.

Shortly before the hay was cut, Arnold had executed to the defendant a personal mortgage upon it, which, as Arnold testified, was given for a book account which he owed the defendant. He also testified that it was a *bona fide* transaction. The mortgage was read in evidence, and the return of the Justice does not shew that any objection was made to this evidence. A witness also testified that he saw the mortgage

Jencks *v.* Smith.

filed, but the return does not shew that the mortgagor resided, nor that the property was situated in the town where the mortgage was filed, nor does it shew that any objection was made on that ground. It appeared that when the hay was levied upon, it had not been actually delivered to the defendant. After the levy, and before the sale, Arnold stated, in presence of the agent by whom the plaintiff bid off the hay, that he had given a mortgage upon it to the defendant. The defendant removed the hay by virtue of his mortgage, and for that the suit was brought. The return, after setting out the above and some other facts, states, "The testimony was here closed." The jury gave a verdict for the defendant, on which the Justice entered judgment in his favor. This judgment was affirmed by the Court of Common Pleas upon *certiorari,* but was reversed in the Supreme Court, on writ of error. (*see* 1 *Denio* 580.)

*H. G. Wheaton,* for plaintiff in error.

*Wm. J. Hough,* for defendant in error.

WRIGHT, J. Two points were made on the argument of this cause: 1. That the mortgage gave the defendant (in the Justices' Court) no subsisting lien upon the grass, as it is not the subject of conveyance or pledge, as security, by chattel mortgage. 2d. That there was no proof on the trial before the Justice of the residence of the mortgagor, at the time of the execution of the mortgage; or that, when executed, the property was in the town in which the mortgage was filed.

With regard to the first point, I concur with the reasoning of the Supreme Court. (1 *Denio* 580.) It was assumed by both parties, on the trial, that by an agreement between Hunt the owner of the land, and Arnold the mortgagor, the grass, at the time the mortgage was given, was the property of Arnold. Both claimed through him. Hunt made no claim, nor was he a party to the controversy. The undisputed ownership of the grass being in Arnold, I see no objec-

tion to his passing his title by a sale, or mortgaging his interest in it. At all events, the transfer to the mortgagee became perfect on its severance from the freehold.

The act of 1833, chap. 279, provides that every mortgage, or conveyance intended to operate as a mortgage of goods and chattels, thereafter made, which shall not be accompanied by an immediate delivery, and be followed by·an actual and continued change of possession of the things mortgaged, shall be absolutely void, as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed in the town or city where the mortgagor, if· a resident of this State, shall reside at the time of the execution thereof; and if not a resident, then in the city or town where the property so mortgaged shall be at the time of the execution of such instrument. It is now insisted, that there was no proof on the trial of the residence of the mortgagor, nor did it appear that the mortgage was filed in the town where the property was at the time of its execution. If the return of the Justice showed affirmatively that this proof was wanting, and that objection was raised, before the Justice, on account of the absence of it, the defect would be fatal. But the return is merely silent on the point, and no objection appears to have been taken before the Justice. Where opportunity is given for objections, and none are made, but the party, whose duty it is to object, remains silent, all reasonable intendments will ·be made by a Court of Error to uphold the judgment. This doctrine, founded in good sense, has been promulgated, in a series of decisions, by the Courts of this State. In the case of· *Baldwin vs. Calkins*, (10 *Wend. R.* 167) on *certiorari*, the Supreme Court held that an omission to object will even authorize the inference of a fact necessary to confer jurisdiction. In *Menderback vs. Hopkins*, (8 *John. R.* 436) a constable, having an execution, paid the amount to the plaintiff, without any demand of, or request by the defendant, and afterwards sued the defendant for the money so paid. There was no evidence on the trial that the constable had made a

demand on the defendant, or that he had been requested by him to make the payment. The Court said, "a demand and request may have been presumed. It was to be inferred as admitted, when nothing was said to the contrary. Indeed, as no objection was made to any of the testimony, but it was submitted to the jury, every inference that could be drawn from the evidence, is to be presumed to have been drawn, and the verdict, by reasonable intendment, is good." In *Fort vs. Monroe*, (20 *Wend. R.* 210) case was brought for negligence of a servant of the defendant in driving a gig, by which a son of the plaintiff was run over and killed. There was no evidence to shew that the servant was acting in the business of the master, or within the scope of his authority, nor was that point made upon the trial, either on a motion for a non-suit, or after the testimony had closed. On a motion for a new trial, the Supreme Court remarked: "The case seems to have been tried and defended upon the assumption of the existence of the relation of master and servant between the defendant and the person driving the carriage. It would, therefore, be unreasonable to disturb the verdict upon the ground now urged, as the counsel did not choose to avail himself of it when it could have been removed, by his adversary, by the production of proof." In *Oakley vs. Van Horn*, (21 *Wend. R.* 305) the collector of a school district was sued, in a Justices' Court, in trespass, for levying upon and selling a saddle for a school tax. In the return of the Justice it did not appear that any evidence was given to shew that before the levy the collector demanded the payment of the tax, nor on the other hand did it appear that the absence of such proof was objected to or in any way noticed on the trial. The collector had judgment, and the Supreme Court, in affirming it, say: "If we are authorized to hold, from the return, that no demand was made of the tax in question, previous to the levy, and that the point was duly raised in the Justices' Court, there was error. But in the case at bar, the return is merely silent as to the proof of demand. No objection appears to have been made on that account, nor does it appear, affirmatively,

that the proof was wanting. We must intend, therefore, that it was given. Had the, objection now raised come before us on a bill of exceptions, it must have been shewn affirmatively, that the collector failed to justify by proving a demand before he levied; and beside, that the defect was mentioned as an objection, for it is one that may be supplied, and we would intend that had the objection been raised it would have been obviated by proof of the fact. Here the parties were present with every opportunity to raise the point." In *Holbrook et. al. vs. Wight,* (24 *Wend. R.* 169) it was necessary for the plaintiffs to sustain their action, to prove that they had accepted or paid certain drafts. There was no direct evidence in the case as to the acceptance or payment, nor was there any objection on that ground raised on the trial. On a motion for a new trial, Cowen, Justice, who delivered the opinion of the Court, held the following language: "It is said there is no evidence in the case, that the plaintiffs had either accepted or paid the drafts. There is not, indeed, any direct evidence, but the fact of acceptance was assumed throughout the trial. The Judge referred to it in his charge to the jury. It is strange, if such a material fact were out of the case, that it was not mentioned as an objection and made a point."

In the present case the fact seems to have been assumed throughout the trial that Arnold was a resident of the town of De Ruyter at the execution of the mortgage; and no objections appearing upon the return, I think we should intend that it was proved or admitted. Clearly upon principle, aside from direct authority, it ought not to be tolerated, that parties should go to trial in a Justices' Court, raising no objections in its progress, or at its close, when any defect in the proof, if pointed out, might be obviated, and afterwards, being dissatisfied with the verdict, an Appellate Court should be urged to reverse the judgment of the Justice on an allegation of such defect.

The judgment of the Supreme Court should be reversed, and that of the Common Pleas and Justice affirmed

Jencks *v.* Smith.

BRONSON, J. On a more careful examination than I gave to the case when it was before the Supreme Court, I am satisfied that the judgment of that Court is erroneous. The mortgage was filed in the town of De Ruyter, where the Justice and the Jurors lived, and where the trial was had; and it does not appear that any objection was made on the trial that the mortgage had not been filed in the proper town, or that there was any defect of proof on that point. It was evidently assumed throughout the trial that De Ruyter was the town where the Mortgagor resided; and the case was litigated upon other grounds. I am of opinion, therefore, that the judgment of the Supreme Court should be reversed; and that the judgment of the Common Pleas should be affirmed.

GARDINER, RUGGLES, and JONES, Js., concurred.

JEWETT, CH. J. and GRAY, J. delivered opinions for affirmance, with whom JOHNSON, J. concurred.

Judgment of the Supreme Court reversed, and that of the Justice and Common Pleas affirmed.