## SUPREME COURT.

THE PEOPLE, ex rel. JAMES HOAG, and others, agt. DARIUS PECK, county Judge of Columbia county.

The validity of a proceeding instituted for the purpose of *bonding a town for railroad* purposes, must be determined by the state of the law as it existed when the *application* to the county judge was made, though the petitions presented for that purpose were mostly subscribed by the petitioners in several months preceding the application, during which time the law had been in some respects changed.'

The law, at the time application is 'made, is that under which the county judge is authorized to proceed, and constitutes the authority by which he is bound in the exercise of his functions.

Under the law as it stood in June, 1871, when this application was made, the petitions presented were valid although they were made upon the *express condition* that the railroad "*be made upon a certain route*" particularly designated in the petition.

There is nothing in either of the statutes—1869—1871, governing the proceedings, requiring that the railroad shall be actually *located* at the time when they are commenced, in order to render them valid, or to justify the county judge in directing the bonds to be issued in aid of the company:

All that these statutes require, in this respect, is, that the petition shall show that the petitioners desire that the municipal corporation, in which they own property, and are taxed, shall create and issue its bonds to the amount named, and invest them or their proceeds, in the stock or bonds of such railroad company in this state, as may be named in the petition.

The statutes relating to these proceedings contemplated that the railroad company shall be *incorporated*, before they can be lawfully taken. But they contain nothing requiring that to be proved as a fact before the county judge, or to be stated with any special particularity in the petition. What they require is that it should be a railroad company within this state, and be named in the petition.

These statutes have reserved no authority to the tax-payers who may become dissatisfied, after they have signed the petition, for *withdrawing their consent* from the application. The consent, when once given according to the form prescribed by the law, becomes irrevocable, when the proceedings are afterwards instituted upon it. The county judge is given no power to allow any person to withdraw his name, though he may permit others to become parties to the proceedings.

The town is not deprived of its power to invest its bonds or their proceeds in the railroad of the company named in the petition, by reason of the incorporation and partial construction of another railroad running some seven miles from the town: for although it was not assessed or taxed upon the assessment roll of the town, as it was not constructed in the town, and was not in operation within its limits, it did not prevent the town from aiding in the construction of the railroad mentioned

in the petition. The road not taxed or upon the assessment roll, must be con-structed and be in operation in or through the town in order to deprive it, for that reason of the power to aid in the construction of another railroad.

It is not enough, under these statutes, to render a tax-payer, a petitioner, that he requested *some other person to subscribe his name to the petition*, and it was placed there by that authority. This power cannot be delegated, it is personal. To conclude the person taxed, he must either subscribe to the petition *himself*, or that must be done by some other person by his direction *and in his presence.* One or the other is required to constitute it his act within the terms and contemplation of law:

*Held*, that it was apparent from the return of the respondent in this case, that neither a *majority of the persons or the property*, upon the instrument used as an assessment roll for the town, united in support of the application. After deducting the names of those irregularly signed to the petition it left *less than a majority, both in names and property*, in favor of the application.

*Third Judicial Department, Albany General Term, Jan.,* 1872.

*Before* THEODORE MILLER, *P. J.*; JOHN M. PARKER *and* CHARLES DANIELS, *JJ.*

WRIT of *certiorari* to the county judge of Columbia county.

GAUL & ESSELSTYN, *for relators.*
NEWKIRK & CHACE *for respondent.*

*By the court*, DANIELS, J.—The proceedings brought into this court by the writ issued in this case were instituted under chapter 907, of the laws of 1869, (*Vol. 2, Laws of 1869, 2303,*) and the acts amendatory thereof, for the purpose of bonding the town of Ancram in Columbia county, to aid in the construction of a railroad through that town by the Rhinebeck & Connecticut Railroad Company. They were commenced by an application made to the county judge, on the 26th day of June, in the year 1871, though the petitions presented for that purpose were mostly subscribed by the petitioners in the preceding months of January and December. But as the laws upon this subject were in some respects, changed intermediate these two periods of time, the validity of the proceeding must be determined by the state of the law as it existed when the application was made.

For it was only by showing a compliance with the law as it then stood, that the application to issue the bonds could be rendered successful. That was the law under which the county judge was then authorized to proceed, and it constituted the authority by which he was bound in the exercise of his functions. He could apply no other rule, for the preceeding statutes so far as a change had been made in them by the law last enacted, was repealed, and for all present and future purposes out of existence. Under the law as it then stood, the petitions presented were valid, although they were made on the express condition, that the railroad should "be made upon a route commencing at or near Rhinecliff, in the county of Dutchess, and running thence to Hog Bridge, and thence to and through the villages of Lower Red Hook and Jackson Corners, successively in said county of Dutchess, and to and through the villages of Gallatinville and Ancram successively in said county of Columbia and connect with the Connecticut Western Railroad at the state line. For section 1 of chapter 925, of the laws of 1871, which took effect on the 12th day of May of that year, sanctioned just such a condition, vol. 2, laws of 1871, 2116, and the condition would probably have been just as valid under chapter 507, of the laws of 1870, if the act of 1871, did not apply to these proceedings, for by that act it was provided, that the railroad company might enter into an agreement with the commissioners, which among other things, should limit and define the place or places where, and the purposes for which the bonds, or their proceeds should be applied or used. Laws of 1870, 1148, for the power to make such an agreement was manifestly conferred for the benefit of the tax payers themselves, and they had the right, therefore, to insist upon it, that it should be observed and made use of according to their direction by the commissioners who might be appointed in the proceedings. And the most practical mode of giving that direction, was by its insertion in the petition, so that it might become the

basis of the authority of the commissioners, and operate as a restriction on that authority. These statutes distinguish the present case from that of the *People* agt. *The Adirondack RR. Co.*, relied upon by the counsel for the relators in which it was held, that the statute did not provide for a conditional petition, for they were enacted after the decision was made which was reviewed in that case, and their object seems to have been in part at least, to relieve the proceedings from the rule adopted by that decision.

There is nothing in either of the statutes governing these proceedings requiring that the railroad shall be actually located at the time, when they are commenced, in order to render them valid, or to justify the county judge in directing the bonds to be issued in aid of the company. Upon this subject both the statutes of 1869 and 1871, are substantially, if not literally the same, and all that they require in this respect is that the petition shall show that the petitioners desire that the municipal corporation in which they own property and are taxed, shall create and issue its bonds to the amount named, and invest them or their proceeds in the stock or bonds of such railroad company in this state as may be named in the petition. Laws of 1869, 2203-4, laws of 1871, 2115-16, the generality of these provisions of course, does leave the tax-payers at liberty to bond their towns for the construction of railroads not passing through the territorial limits of the municipality in which they are taxed. But the dictates of their own interest would ordinarily prove to be a sufficient safeguard for the prevention of abuse in the exercise of the authority conferred. The case would be exceedingly rare, and the advantages very conspicuous to induce the taxpayers of the municipality to incumber and burthen their property for the benefit of a railroad company whose road should not be expected to enter their territorial limits. The object of these statutes, is to enable municipial corporations to aid in the construction of railroads, which may be reasonably expected to promote the convenience and

advance the interests of the persons residing or owning pro-, perty, within their respective limits, and not to. buy and sell· railroad stock for the profit expected to be derived from such an adventure.   And where it should be apparent that the investment was merely designed for speculative purposes the commissioners would undoubtedly be restrained from entering. into it, because it would be wholly foreign to the objects. which the statutes were designed to promote.   In the present case no ground exists for suspecting any such abuse to· be intended.

The statutes relating to these proceedings certainly con-·templated that the railroad company shall be incorporated·before they can be lawfully taken.   But they contain noth-, ing requiring that to be proved as a fact before the county judge, or to be stated with any special particularity in the, petition.   What they require is that it should be a railroad. company within this state, and be named in the petition, laws of 1869, 2303-4, laws of 1871, 2116, and that was complied with in this case.   It could not be a railroad com-' pany in this state, unless it was incorporated under its laws, and the statement of what the statute requires the petition', to contain, is necessarily an averment that the company has. been so incorporated.

These statutes have reserved no authority to the taxpayers, who may become dissatisfied after they have signed the peti-. tion, for withdrawing their consent from the application. The consent when once given according to the forms prescribed by the law becomes irrevocable, when the proceedings are afterwards instituted upon it, as they were in the. present instance.   The county judge is given no power to allow any person to withdraw his name, though he may permit others to become parties to the proceedings.   The latter has been expressly provided for, but no express or implied. provision can be found allowing the former to be done.   On the contrary the spirit and policy of the law is opposed to it,, The county judge properly, therefore, refused to permit any

of. the contestants to withdraw their names from the application upon the hearing.

He was also right in holding that the town was not deprived of its power to invest its bonds or their proceeds in the railroad of the company named in the petition, by reason of the incorporation of the Poughkeepsie and Eastern Railroad, and the partial construction of its road. For although that road was not assessed or taxed upon the assessment roll of the town, still as it was not constructed in the town, and was not in operation within its limits, it did not prevent the town from aiding in the construction of the railroad mentioned in the petition. The road of the other company was only constructed to Stissing, a distance of seven miles from the town of Ancram, and the road not taxed or upon the assessment roll, must be constructed and be in operation in or through the town, in order to deprive it for that reason of the power to aid in the construction of another railroad. Both statutes are the same in this respect, laws of 1860, 2309, sec. 10; laws of 1871, 2118, sec. 10. Whether a completed assessment roll under the terms used in the act 1871, is the same thing as the completed roll, as those terms are used in the statutes prescribing the authority and duties of the assessors in making the roll, may well be doubted where it does not appear that the taxes imposed by means of it have afterwards been paid. For by the act of 1871, the word "taxpayers" is made to mean a corporation, partnership or person assessed or taxed for property, which would ordinarily be deemed to contemplate a legal assessment or tax; or a corporation, partnership or person intended to be taxed which shall have paid, or be liable to pay, the tax imposed, laws of 1871, 2116-17. Under this provision of the statute where the person, corporation or partnership has not been lawfully assessed or taxed, but merely intended to have been so, and the tax has not been paid, and it could not be assumed to be paid without proof in order to sustain these proceedings, there is good reason for holding that the tax

should be shown to have been lawfully imposed, and that would require a valid assessment roll. For the corporation, partnership or person intended to be taxed could not otherwise be liable to pay the tax, within the terms used in the statute.

But it is not necessary to examine or discuss that proposition, because it is apparent from the return of the respondent that neither a majority of the persons or the property, upon the instrument used as an assessment roll for the town, united in support of the application made. This is a special statutory proceeding, not only in derogation of the mode sanctioned by the common law, but beyond that not entirely consistent with the full protection and security of the rights of the minority in the enjoyment of their property. In favor of such proceedings nothing has been permitted to be intended by the common law which has always regarded them as liable to an unfavorable contrast with the course sanctioned by its own well settled principles; for that reason in actions, proceedings and trials, according to the course of the common law, important presumptions and intendments are often made by way of sustaining the results which may be reached in the consummation. Then the presumption is in favor of their regularity, and of the correctness of the judgments pronounced. And to sustain them, facts not proved will, under certain circumstances, be presumed to exist (*Jencks* agt. *Smith*, 1 *Comst.*, 90). But in proceedings of the nature of those involved in this case a different rule prevails, and by that rule nothing can be presumed, or intended in their favor. But the party endeavoring to maintain them must be able to show that the terms of the statute providing for them have been in all essential particulars complied with. If that cannot be done, they are to be held to be invalid, and the rule in this respect has been applied to them in the recent cases decided by the courts in this state (*People* agt. *Adirondack Railroad Co.*; *Same* agt. *Smith, county judge of Ontario Co.*; *Same* agt. *Hurlbert, not yet reported*).

Under this rule, and the construction given to the statute authorizing these proceedings, it is not enough to render a tax-payer a petitioner, that he requested some other person to subscribe his name to the petition, and it was placed there by that authority. The power conferred has been held to be personal in its nature, and not capable of being delegated by a mere request or consent. To conclude the person taxed, he must either subscribe the petition himself, or that must be done by some other person by his direction and in his presence. One or the other is required to constitute it his act within the terms and contemplation of the law.

The respondent's counsel claim that as no objection was made on the hearing that a simple request or direction was insufficient, that it may be presumed that the person whose name was subscribed was personally present when that act was performed. But that cannot be done, because the rule already mentioned excludes presumptions in favor of the validity of the proceedings, and if it did not, there is no room for its application in the present instance. It could not, without doing violence to the results of ordinary experience, be presumed that out of one hundred and sixty-three names, fifty-one as the relators claim them, and forty-one as the respondent's counsel concede them to be, should fail to subscribe their own names to so important a document as this petition was, if they were personally present when their names were respectively subscribed. But this portion of the case does not rest simply on this improbability. For on the hearing, the distinction appears to have been taken by witnesses and counsel between the case of the signature placed to the petition for the tax-payer in his presence and by his direction and request, and the simple circumstance of the same thing being done by direction or request alone, where the presence of the person whose name was subscribed or that of the person present at its subscription, was regarded as important, and proof could be given sustaining the fact, care seems to have been taken to make it appear. Hence,

when the relator's witness, Martin L. Hills, was examined concerning signatures not subscribed by the persons themselves, as to John and David Tripp and Talmadge Pulver, he stated that their names were subscribed in their presence and by their request, and as to others he stated that their names were placed to the petition by their direction, or request, but without adding anything concerning the presence of either of those persons. The examination of Archelaus Brandt, took the same direction. For as to Hugh and James McGill who had been previously included among persons whose names he has signed at their request, he stated further, on his re-direct examination, that he signed each of their names in the presence of the person whose name was signed. The inference is very clear from this evidence that they were the only persons among those he had previously named whose names were so subscribed. The witness, William S. Thompson appeared to have had his attention directed to the propriety of mentioning his own personal presence when certain signatures were obtained and subscribed by the request of the persons whose names they were. For in four such instances he says that the names were signed in his presence. These three witnesses proved nearly all the signatures subscribed, either by the act of the persons bearing the names, or by some other person by their respective requests, and if any others were subscribed in the presence of the taxpayer himself, it is certainly to be presumed they would each have mentioned it as long as their attention appears to have been directed to that subject.

In addition to that the manner in which the statement upon the subject of signatures being placed to petition at the request of the person whose name was so subscribed, was made, imports that it was all the witness could relate upon the subject.

Generally, it was simply that the witness signed by direction, or request of the person whose name was subscribed, whether the petition was present when the direction was

given, or the request-made, or the name was subscribed in the presence of the person bearing it, was not stated. And from the evidence given, no reason exists for supposing that the witnesses knew more upon the subject they testified about than they stated in their evidence. It follows, therefore, from all those considerations, that the names of the persons subscribed simply upon direction, or request, must be excluded as not sufficiently authenticated, and that will leave less than a majority both in names and property, in favor of the application.

It was shown on the hearing in favor of the application, that by treating joint owners, or occupants, as one name, there were two hundred and fifty-five names on the assessment roll, excluding as they should be under the act of 1871, all persons taxed only for dogs, joint owners or occupants, by the act of 1871. When taxed as a partnership, as by the assessment roll appears to have been the case in this town, are to be regarded as a tax-payer only within the express terms of the act of 1871 (*Laws of* 1871, 2116), and for that reason should be included simply as one person. A majority of these persons would be one hundred and twenty-eight. Including the firm of R. & S. Bachman as one person, in the table of names presented by the respondent's counsel, and but one hundred and nineteen personally subscribed the petition, with those who appeared on the hearing and desired to join in the application. To those persons, it is claimed there should be added what is called nine others, whose names were subscribed in their presence. But as four of these persons appear on the assessment roll as two firms of Hugh & James McGill, and John & David Tripp, they can only be included as two persons under the terms of the statute rendering a partnership taxed, liable to be treated as a tax-payer only, adding these nine, for the reason stated, as only seven persons, and they can be called no more under the language of the statute, and the number falls two under the requisite majority. The property of the town included

in the assessment roll amounted to the sum of $724,900, one half of which would be $362,450.

Of what the one hundred and nineteen persons already mentioned, owned, or were taxed for, $342,418. And those which it is claimed should be added, because their presence as well as by their request, were assessed for property in the aggregate amounting to the sum of $5,150, which added to the other amount would make only the sum of $347,575. And that would be $14,875 under the requisite majority, so far as the taxed property is concerned.

But the evidence does not justify the conclusion, that all of these seven should be added to the one hundred and nineteen. For as to John Decker, the evidence given by Hills was, that he wrote his name, he says: "I wrote it in the wagon, by his request, I called upon that John Decker to sign the petition, he requested me to put his name down, and I put it down." The same witness says, he got Darius Palmer to sign the petition, and he afterwards added, "I know the name of Darius Palmer was signed to the petition in my presence and by his direction." He had also previously stated, that Palmer at the store of the witness told some one to sign the petition for him. As to George Roraback, the same witness said, that his signature was in the handwriting of the witness, he then adds he signed it at my store. I remember asking him to sign the petition. He also says, that he signed the name of Nicholas Smith at the house by his request. The evidence concerning these signatures, four in number, it must also be remembered was given by one of the witnesses, who in his own statement was careful to add that the signature of some of the persons to the petition were placed there by him at their request and in the presence of the persons whose names were signed. The omission of that circumstance in the case of these four persons is rather more than commonly significant, and in its absence it could not properly be assumed, that either was present when his name was placed by this witness to the

petition.    Taking them from the seven which it is claimed should be added to the one hundred and nineteen, and the names are six below the majority required by the statute, and the property $15,415 below.    It follows from this view of the evidence, that the decision of the county judge was erroneous, and for the reasons stated in the opinion delivered in the court of appeals, the proceedings should be reversed, and dismissed with costs.