Graves, J.:
The company sued Covert in replevin for a quantity of lumber.' He pleaded the general issue, and at the trial the judge directed a verdict in his favor. The company allege error.
It appears that from some time in 1871 Wilson Homer and one Henry P. Marcy or Holowil P. Marcy, it being disputed whether his name is Henry or Holowil, dealt in lumber as partners under the firm name of “Homer & Marcy.” Homer resided in the town of North Plains, Ionia county, and Marcy, in Massachusetts. Marcy was here occasionally, and when so, took active part in the firm business. The firm got a large quantity of logs, and the lumber in question was made from them -by the company, who claim to have bought the logs from Homer’s wife, who, it is also claimed, held them on chattel mortgage made by the firm on February 8, 1875. The purchase by the lumber company from Mrs. Homer is alleged to have been made about July 28, *1875, and the sale is claimed to have been made with the assent of Homer, the resident member of the firm, Marcy then being and residing in Massachusetts. The mortgage purported' to be by the firm, and was signed in the firm name, and is assumed on all sides to have been upon firm property and no other. A portion of the logs, at the making of the mortgage, were in the town of North Plains, where Homer, the resident member of the firm, lived, and the rest were in the town of Crystal, Montcalm county. The mortgage was filed in the clerk’s office of North Plains, February 9, 1875, but was not filed in Crystal. The defendant was deputy sheriff and justified interference with the property under proceedings in two attachment cases, one being a case brought by Clark Thompson, and the other by the Clark & Rhinesmith Lumber Company. The suit in replevin is defended in the interest of Thompson. *242 In the first case the affidavit for attachment was made March 2, 1875, and it described the firm of “Homer & Marey” as debtor, but stated the names of the members as Wilson Homer, of Ionia county, Michigan, and Henry P. Marey, of the state of Massachusetts. The writ was issued on the same day against Wilson Homer and Henry P. Marey, and made returnable on the first Tuesday of April, 1875. The sheriff made return on the 4th of March and certified seizure of logs in the town of North Plains, and others in Crystal, Montcalm county, ■and to service on Homer, and further, that after diligent inquiry he was unable to find defendant Henry P. Marey, in the attachment named, in his bailiwick. The printed record makes the return state that the levy on the logs in Montcalm county -occurred on March 30, but this must be a mistake, since it was admitted that the writ was returned on March 4. It may be ■observed further that plaintiff’s brief in one place states that the writ was returned on the 4th of April, but as it is immediately added, “thirty days before the return day named in it,” the whole statement corrects itself. These inaccuracies are here noticed merely to call counsel’s attention to the necessity for greater *care concerning the records and briefs furnished the court. Such errors might lead to very detrimental results.
On the 9th of April declaration was filed. It contained the common counts with copies of two acceptances by Homer & Marey of drafts upon them by Thompson.
Notice was published on the 15th of April and in each week afterwards until May 27th inclusive. July 28th affidavit was made and filed, showing the filing previously of proof of publication of notice on account of the absence of Henry P. Marey; that more than thirty days had elapsed, and that neither defendant had appeared or pleaded; and on the same day default was entered.
August 4th a rule was entered making default absolute and referring it to the clerk to assess damages, and on the same day the clerk assessed the damages on the acceptances, called notes by the clerk, and reported the same at six hundred and sixty dollars and eighty-five cents. On the same day, also, *243 final judgment was entered in favor of Thompson and against Wilson Homer and Henry P. Marcy for the amount reported by the clerk, and costs then taxed at twenty-seven dollars and thirty-six cents. Execution was issued August 11th, and about ninety-three thousand feet of lumber levied on, as lumber made by the company from the logs attached.
The replevin suit was commenced on interference with the lumber by the defendant as deputy sheriff under the levy.
The proceedings introduced in the attachment case of the Clark .& Rhinesmith Lumber Company consisted of the writ, affidavit, return and inventory. The affidavit and inventory are not printed, and are understood as being beyond criticism. No pleading had been filed and no appearance made, neither had any publication been made. The writ was issued April 28, 1875, and made returnable the first day of June following, and it ran against Wilson Homer and Holowil P. Marcy, and was returned February 10, 1876, with a certificate of levy May S, 1875, on a ^quantity of logs in North Plains and another lot in Crystal, Montcalm county, and of service May 4, 1875, “on the defendant Holowil P. Marcy, in attachment named,” and that after diligent inquiry Wilson Homer, the other defendant, could not be found in the bailiwick. When the company were proceeding to make out their case and show their title to the lumber through purchase of the logs from Mrs. Homer, who they claimed held under the mortgage of the firm given on the 8th of February, 1875, and who, as they further claimed, had the assent of Wilson Homer, the resident member of the firm in making the sale, they offered the mortgage in evidence; but the court, on objection, excluded it on the sole ground, that as Marcy was not a resident of this state, but of Massachusetts, and the mortgage was only filed in North Plains, where Homer, the resident member of the firm, lived, and not in Crystal, where part of the property was, it was absolutely void as against attaching creditors. If the general theory of the court below were admitted, if it were conceded that in consequence of Marcy’s non-residence the mortgage, in order to bind the logs in Crystal as against the firm creditors, should have been filed in *244 that town, still I should not he prepared to say it was void as-to the logs in North Plains, where it was filed and where Homer lived. It is very clear that a conveyance or encumbrance may be bad as to part of the property which is the subject of it, and good as to the residue; and the reason for the distinction is very strong where the object of the invalidating provision is to enable the public to know whether particular personal property is encumbered or not. If the mortgage in question had embraced no other logs than those in North Plains, no question could have been raised, since the filing would then have been sufficient under the general provision for filing in the town of the resident mortgagor, and also under the special provision for filing in the town where the property is in case of a non-resident mortgagor, and it hardly seems reasonable to say that the fact that-property was included which then happened to be *in another town “destroyed the entire security and rendered it void as against that separate and specific property in respect to which the law was fully complied with.
If the logs in North Plains had been put in one mortgage- and those in Crystal in another, the non-filing in the latter town would not have impaired the mortgage on the logs in North Plains, and as the invalidating regulation does not concern the concoction or execution, but allows the instrument to come into operation, and supposes it valid in its inception, and contemplates something afterwards upon which its validity as to given property and as against given parties is to depend, I do not see why the instrument may not be considered as two-mortgages, when the property in the one town consists of entire chattels distinct and distinguishable from the property in the other town. But passing this view, the more important question is, whether upon the facts disclosed a filing in any other town than North Plains was necessary.
The obvious purpose of the statute is to preserve the validity of mortgages of personal property and at the same time to prescribe some place in which all may be filed so as to give notice to the public that the property is encumbered, and the implication is too strong to be questioned that it was supposed *245 by tbe legislature that all cases, as well those of non-resident as those of resident mortgagors, were provided, for. — § lf!06 G. L. If the mortgagor is a resident of the state, the instrument is to be filed in the township or city of his residence, but if a non-resident of the state, then in the township or city where the property is. As personal property has no fixed and permanent locality, but is always subject to be moved from place to place, and is supposed for many purposes, even where no physical shift of position occurs, to follow the domicile of the owner, it is plain that a mode of filing mortgages given upon it, whenever and wherever practicable, which would connect the owner and his place of domicile with the property, would be the surest and the best for the purpose of making known *to the world the existence of the claim against the property. Hence the sweeping regulation that in case of resident mortgagors the filing is required, not where the property may happen at the time to be, but where the mortgagors reside. This is the requirement, whatever the nature of the property, or however distant its actual situs from the mortgagor’s residence.
This was not practicable in case of non-resident mortgagors, and the best regulation that appeared possible in regard to them was to require the filing in the locality of the property. But this provision at best can afford only small protection to the public. It is an exceptional and inferior regulation, and designed strictly for cases not susceptible from their very nature of any thing better to guard the public against imposition where possession is unchanged, and it cannot be supposed to have been intended for cases fairly within the spirit of the other provision and admitting of a better way to carry out the policy of the legislature. There is nothing to intimate or imply a design or need for a filing at more than one place when the mortgage proceeds from one resident owner and covers the entire interest, and that place is where the owner resides. This statement, it will be noticed, leaves out those cases where mortgages are given by resident co-owners or joint owners and who reside in different towns or cities. It may be claimed that in such cases each one who joins is a *246 distinct mortgagor and grants or pledges a separate and distinct interest.
For many purposes a firm, though managed from necessity by its members, is a distinct concern and possesses a sort of individuality. The assets are held in a sort of community,, but the partners do not hold as common tenants or joint tenants. The property is distinctly separated from that belonging to the individual members and it constitutes an identical and entire interest. The law makes distinctions between debtors and creditors of the firm on the one hand, and debtors and creditors of the persons composing the firm on the' other, and assets are gathered, catalogued, *and appropriated according to these distinctions. A member may become debtor or creditor of the firm, and each member is agent for it and within limits stands for it. For some purposes, then, the law contemplates the firm as having a sort of ideal existence, and with the faculty of being in the relation of principal to agent in a certain representative sense. The agency consequent upon the relation extends no further than to firm transactions. As partner there is no power to bind' individual interests. Either partner may contract for the firm in the firm name, and the act is the act of the firm and not that of the individual who actually transacts.
It is just the same as though the firm were a natural person and acted personally.
Taxes may be imposed on a firm in the firm name (§ 978,. G. L.); and suits are allowed to be brought in justice’s courts' for and against copartnerships in the firm name, where the members names are unknown. — § 5807, G. I. These and other characteristics of individuality are sufficient to show that the firm has in many aspects a recognized legal identity.
That it may have a local abiding place is as certain as that a corporation can. — Carron, Iron Co. v. Maclaren, 5 H. of Lords Cases, 416. And where it has, I see no reason why it may not, as well as a corporation, be said to reside there, within the meaning of the statute which provides for filing chattel mortgages. Undoubtedly there may be cases in which it would be difficult to decide upon the question of abode, but *247 this is nothing more than happens often where the question concerns the residence of natural persons. Indeed, there is reason for thinking that much fewer perplexing cases would occur in inquiries respecting the seats or abodes of firms, than in inquiries concerning the residence of individuals. In this case the mortgage purported to be the contract or moi'tgage of the firm, and not of the individuals composing it, as individuals, and the evidence tended to show that the firm resided or had its seat in North Plains. The *only member residing in the state, the only party representing or authorized to represent the firm lived there, and in the state of things which appeared, and in the absence of countervailing proof, this was strong evidence of the residence of the firm there. This mortgage, on firm property, made in the firm name by this very party, was there filed, and it seems to me this should be considered a sufficient filing within the spirit of the statute.
Indeed, as the instrument was not one signed by the individual partners and did not purport to be on individual account, but was executed by one in the firm name alone, I am at some loss to find any plausible warrant in the statute for contending for a filing anywhere else. It is not to be understood that a m'ortgage on firm property, signed by all the partners, may not be well filed where they reside, if in this state, even though such residence should be elsewhere than that of the seat of firm business. That is not the present case. Then the instrument would be the mortgage of the individual members but including firm property. What is said on this subject is meant to be confined to a mortgage made in fact by the resident partner, the other living abroad, in the firm name alone, and as a firm act alone, and on the firm property and no other.
We now come to objections made by the plaintiff to the attachment proceedings, and first as to those relating to the suit commenced by Thompson.
The first objection refers to the affidavit, and counsel argues that its language implies that it was made after the writ, whereas it was required to be made before, as a basis for the *248 writ. The point is without merit. The affidavit was made the same day the writ was issued, -and it speaks of being annexed to the writ. The presumption is that the writ did not pass from the clerk’s hands until the affidavit was made, and it is of no consequence whether the attachment was or was not filled out before the making of the affidavit. Where two acts are done at the same time, that shall take effect first which ought in strictness to have been *done first in order to give it effect. Claflin v. Thayer, 13 Gray, 459; Carleton v. Ashburnham, 102 Mass., 348; Plowden, 459.
It is said the writ was prematurely returned as to Marcy, who was not served. Whether it was or not it was not a ground of objection to the introduction of the proceedings, judgment, execution and levy. Service was effected on Homer, one of the joint debtors, and jurisdiction was obtained. It is further objected that it does not appear that any inventory was made, or copy served, of the property attached in Montcalm. Without pausing to remark upon the nature of this objection, as one taken to the admission of the proceedings in evidence in this case, it is enough to say that the return as set out in the record does not support it. Again, it is claimed that it was necessary to get personal service on Marcy or proceed against him by publication, and that the alternative of publication could only be resorted to in the event of inability to make service on him, and that such inability could not be shown by a return made a month prior to the return day.
Now where property is attached and “neither of the defendants” is found, a publication is necessary: § 6414, G. L.; but if service is made “on either of the defendants” it is not necessary, and the same proceedings may be had in all respects, as upon the return of an original writ of summons personally served, in a suit commenced by such summons. — § 6418.
Where the service is not on any defendant and none of the defendants aj>pear, the plaintiff may publish, and thereupon proceed as if service had been made: § 6416; and any defendant not served may appear at any time before judgment and be admitted to defend. — § 6417.
*249 In this case there were two defendants and their joint property was attached and one of them was served. The ■court got jurisdiction and the case was subject to be proceeded in without publication and “ in all respects ” as upon return of original writ of summons personally served: *§§ 6414, 6413, 6416, supra; and Marcy was entitled to appear before judgment and be admitted to defend. —§ 6417. Hence if failure to continue search for him up to the return day constituted legal fault to be complained of by any body, it was not a fault liable to be taken advantage of in this collateral manner and by the plaintiff.
An objection was also made to the admission of the record, based on.alleged irregularities in regard to the assessment of damages by the clerk, but it appears so devoid of substance and appropriateness that it would be a waste of time to discuss it, and the objection, based on assumption that Marcy was misnamed and called Henry when he should have been called Holowil, was without force. The record could not be rejected •on such grounds. — Maxwell v. Stewart, 22 Wall., 77.
A further ground of objection was that Covert could not lawfully justify his right to take the lumber on the execution in virtue of the attachment of the logs. Surely the record was not to be excluded on any such reason. There does not appear to have been any dispute but that the lumber in con-' troversy was made from the very logs attached. But if there should be, it would be open to Covert or the real party in-interest to prove if he could that it was, and the record in the attachment suit would be admissible as part of his case. It could not be excluded upon a bare claim by plaintiff that the fact was otherwise. The question would have to depend upon ■extrinsic evidence. The record would not show that the lumbei seized on the execution was lumber manufactured from the identical logs seized by attachment.
The questions made upon the admission of the proceedings in the attachment case begun by the. Clark & Rhinesmitk Lumber Company are not perceived to be of any practical importance. The property -was claimed under the proceedings in the other case, and Thompson, who was plaintiff there) *250 swore that this suit against Covert was defended in his, Thompson’s, behalf, and this seems to *have been? conceded. If the title of the plaintiff in replevin should be found valid as against the proceedings in the suit of Thompson, it is not perceived that the proceedings in the other case could avail any thing to the prejudice of that title; and on the other hand, if the claim under the Thompson suit should prevail, there seems to be nothing, so far as the facts are disclosed, to lead to an opinion that any question between the-present plaintiff and the Clark & Rhinesmith Lumber Company concerning the lumber in controversy would remain to-be contested.
Some other matters connected with refusals to charge as requested by the plaintiff have been discussed, and especially by plaintiff’s counsel, but as the court dealt with the case as it stood in proof with the mortgage excluded, it is hardly necessary or even safe to examine such matters now.
The judgment should be reversed, with costs, and a new trial ordered.
The other justices concurred.