NICHOLAS W. HARDER, AS EXECUTOR, ETC., OF LUCRETIA WENDOVER, DECEASED, RESPONDENT, v. HERMAN PLASS AND WILLIAM H. PLASS, APPELLANTS.

_Mortgage of rye on leased land — good as between landlord and tenant — effect of the filing of a second and subsequent mortgage, prior to the first mortgage._

On February 16, 1888, one Harder leased to Gardner a farm which Gardner had already occupied for two years under a prior lease, and upon which a crop of rye was then growing ; the prior lease reserved to the lessor all rye sown on the farm in the fall prior to its termination. On the same day Gardner executed a mortgage to Harder covering the rye, to secure $400 of unpaid rent then in arrear, under the former lease, and also another mortgage upon the same rye to secure $650, the rent agreed to be paid under the lease of February 16, 1888 both of which mortgages were filed in the proper town clerk's office on March 1, 1888.

Prior to this time and on February 10, 1888, Gardner had borrowed of one Plass $200, and had given him his note for that amount, and at the same time agreed to give him a chattel mortgage to secure such loan and ninety-four dollars and twenty-five cents of an old account, and on the 17th of February, 1888, the day after the date of the execution of the two mortgages to Harder, Gardner executed a chattel mortgage to Plass upon this same rye to secure the loan and the old account due to him as above stated, which mortgage was on the same day filed in the proper town clerk's office, and was taken by Plass without any knowledge of the existence of the two mortgages which had been given to Harder.

_Held_, that, as between Harder, the landlord, and Gardner, the tenant, this rye was personal property and might be mortgaged as such.

That Harder, having failed to file his mortgages before the delivery of the mortgage to Plass, his lien on this property would have been subordinate to that of a mortgagee in good faith within the meaning of the statute (chap. 279 of 1833), but that Plass was not such a mortgagee in good faith, as the mortgage to him was given for a pre-existing indebtedness without any new consideration.

That Harder had the prior lien, under his mortgages, upon the rye.

APPEAL by the defendants from a judgment of the Supreme Court, entered in the office of the clerk of the county of Columbia on the 18th day of February, 1890, upon the report of a referee.

*John Cadman,* for the appellants.

*E. R. Harder,* for the respondent.

MAYHAM, J.:

Plaintiff, as executor and trustee, leased to one Gardner a farm for two years, ending April 1, 1888, reserving to the lessor all rye sown on the farm in the fall prior to the termination of the lease.

On the 16th of February, 1888, plaintiff and Gardner settled and there was found due the lessor, for accrued rents, $400. On that day the plaintiff again leased the farm to Gardner for one year for $650, taking from Gardner on that day a mortgage on the rye then growing on the farm for $400 to secure the unpaid rent in arrears, and also another mortgage on the same rye for $650 to secure the rent agreed to be paid for the ensuing year.

These mortgages were filed by the mortgagee in the proper town clerk's office, on the 1st day of March, 1888.

On the 10th day of February, 1888, Gardner borrowed of Herman Plass, one of the defendants, $200, and gave him his note for the same, and at that time agreed to give him a chattel mortgage to secure that loan and ninety-four dollars and twenty-five cents of old account, for which he was indebted to Herman Plass. On the 17th day of February, 1888, Gardner executed and delivered a mortgage on this same rye as security for the amount of this note and book account to Herman Plass, who, on the same day, caused the mortgage to be filed in the proper town clerk's office. At the time of taking this mortgage Plass had no knowledge of the existence of the mortgages to plaintiff.

The rye covered by these three mortgages was harvested by Gardner while holding under the lease of February 16, 1888, and

the straw from the same was delivered by Gardner, without the knowledge or consent of the plaintiff, to the defendants, who at the time of taking the same had knowledge of the plaintiffs' mortgages. After such delivery plaintiff demanded the straw of the defendants, who refused to deliver the same, and plaintiff brings this action.

The rights of the plaintiff and defendants to this straw rest alone upon their respective mortgages; and, as between themselves, must be determined in favor of the one having the first or superior right by virtue of his mortgage.

On the part of the plaintiff it is insisted that this rye at the time it was mortgaged to him was a chattel real, and as such not within the provisions of the statute requiring a mortgage or conveyance of goods or chattels, not accompanied by an immediate delivery and followed by a continual change of possession, to be filed. If this rye in its then condition was a chattel, then the plaintiffs' contention on this point is not sound. Subdivision 7 of section 3343 of the Code of Civil Procedure defines personal property as follows: " The words ' personal property' include money, chattels, things in action, and evidences of debt. The word " chattel" is co-extensive with goods and chattels."

This rye would seem clearly to come within the plain meaning of this definition, and both parties to this controversy had treated it as a chattel. As between the plaintiff, who in this case was the landlord, and Gardner, the tenant, this rye was personal property, and might be mortgaged as such. (*Smith* v. *Jenks*, 1 Denio, 580.) In this case the tenant occupied land under a lease by the terms of which he was entitled to the growing crops, and it was held that he might mortgage it as a chattel by personal mortgage, while yet growing, and this was affirmed on appeal by the Court of Appeals on the ground that both parties had treated the grass as a chattel. (*Jenks* v. *Smith*, 1 N. Y., 90.) But in *Green* v. *Armstrong* (1 Denio, 554), the rule governing this class of cases seems clearly stated, and which when applied to this case is decisive of this question.

In that case the court says: " The word land is comprehensive in its import, and includes many things besides the earth we tread on, as waters, grass, stones, buildings, fences, trees and the like, for all these may be conveyed by the general designation of land." * * * " They pass to the heir by descent as part of the inheritance, and not

as personal chattels do, to the executor or administrator," \* \* \*
" and being strictly real property they cannot be sold on an execution against chattels only."

" It is otherwise with growing crops, as wheat and corn, the annual produce of labor and cultivation of the earth; for these are personal chattels and pass to those entitled to the personal estate, and not to the heir." \* \* \* They may be sold on execution like personal chattels.

It follows, therefore, both within the definition given in the Code (§ 3343, *supra*), and within the rule laid down in the cases, that this rye, at the time of the execution of these mortgages, was personal property belonging to Gardner, and liable to be mortgaged as a chattel by him. The case of *Booth et al.* v. *Kehoe et al.* (71 N. Y., 341), cited by the learned counsel for respondent on this point, has no application to this case. In that case the mortgage was of a lease or chose in action, and not a chattel.

Chapter 279 of the Laws of 1833, provides that " every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the thing mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed," etc.

The plaintiff having failed to file his mortgage before the delivery of the mortgage to Plass, would, for that reason as against Plass under his mortgage, lose his lien on this property, provided Plass is a mortgagee, in good faith, within the meaning and intent of the act above quoted; unless he can claim some immunity from the terms of the lease of February sixteenth, which, for security for the rent, refers to the terms of the mortgage.

There are nó provisions in this lease or mortgage that the title to this crop should remain in the plaintiff, as in the case of *Andrew* v. *Newcomb et al.* (32 N. Y., 417), cited by respondent; and it would seem that the most that could be claimed for that provision in that lease is that it was intended as a security, and as such was subject to the provision of the statute requiring mortgages to be filed. Were the defendants in this case subsequent mortgagees in good faith ?

On the 10th of February, 1888, Plass loaned this $200, and at that time Gardner agreed to execute a mortgage on the rye to secure that loan and the old debt. At that time Gardner had not renewed his lease and had no interest in the rye which he could mortgage. The loan was, therefore, made with no other security or evidence of the debt than the note. If Gardner had on that day executed to Plass a mortgage on the rye, he not having the title, but intending to acquire it *in futuro*, the mortgage would have been void. (*Otis* v. *Sill*, 8 Barb., 102; *Gardner* v. *McEwen*, 19 N. Y., 123.) By the lease to Gardner on the 16th of February, 1888, he acquired title to this rye, and on the seventeenth of the same month, and after he had mortgaged this rye to the plaintiff, he executed a mortgage to Plass to secure the $200 loan and an old account; at that time no credit was given on the faith of the mortgage and no rights or valuable consideration passed from Plass to Gardner for the mortgage. The only consideration for the mortgage on the day it was executed was wholly a passed one.

The agreement of Gardner to give a mortgage when the loan was made was an executory agreement, which created no lien on the property and could not be enforced against it, especially as the title was not at that time in Gardner. (*Otis* v. *Sill, supra.*)

When the mortgage was given it was for a pre-existing debt, and the mortgage was, therefore, not a subsequent mortgage in good faith, so as to divest the right of the holder of a valid, prior and unfiled mortgage.

In *Wood* v. *Robinson* (22 N. Y., 567) the court says: "Where a conveyance is made or a security taken, the consideration of which was an intended debt, the grantee or party taking the security is not looked upon as a *bona fide* purchaser," * * * "and it is well settled that a grantee or incumbrancer, who does not advance anything at the time, takes the interest conveyed, subject to any prior equity attaching to the subject."

To the same effect is *Arnold* v. *Patrick* (6 Paige, 310); *Thompson* v. *Van Vechten* (27 N. Y., 581). In *Jones* v. *Graham* (77 N. Y., 628) the court, in discussing the effect of chapter 279 of the Laws of 1833, held: "Nor is a person a mortgagee in good faith, within the meaning of said statute, whose mortgage was given for a pre-existing indebtedness without any new consideration."

The defendants are not, therefore, in a condition to challenge the prior mortgages of the plaintiff on the ground that they were not filed before theirs.

Nor does their diligence in filing their mortgage in any way affect the priority of the plaintiff's unfiled mortgages, for the reason that they are not, within the rules above referred to, subsequent incumbrancers in good faith. As between the mortgagor and mortgagee, all the mortgages are valid, and as the plaintiff lost nothing of his rights as to the defendants' mortgage by his failure to file his, it follows that the plaintiff, under his prior mortgages, has title to this straw as against the defendants and their vendor.

The report of the referee was right, and must be sustained and the judgment entered, with costs thereon, affirmed.

LEARNED, P. J., and LANDON, J., concurred.

Judgment affirmed, with costs.