(28 Misc. Rep. 134.)

### BUEB v. GERATY et al.

#### (Supreme Court, Appellate Term.    June 28, 1899.)

1. CHATTEL MORTGAGES—BY FIRM—PLACE OF FILING.

Under Laws 1833, c. 279, § 2, which requires chattel mortgages to be filed "in the several towns and cities of the state where the mortgagor therein, if a resident of this state, shall reside at the time of the execution thereof," it is not sufficient, as against subsequent purchasers and mortgagees in good faith, that a mortgage executed by a partnership on partnership property be filed in the city where the partnership has its place of business, and where one of the partners resides, but the mortgage should also be filed in the town where the other partner resides.

2. SAME—SUBSEQUENT MORTGAGEE IN GOOD FAITH.

One who takes a chattel mortgage to secure an antecedent debt is not a mortgagee in good faith, within Laws 1833, c. 279, § 1, which provides that a chattel mortgage not properly filed shall be absolutely void "as against subsequent purchasers and mortgagees in good faith."

3. SAME.

The fact that an unfiled chattel mortgage was given for an antecedent indebtedness is of no avail to a subsequent mortgagee whose mortgage is properly filed, where he is not a mortgagee in good faith.

Appeal from city court of New York, general term.

Action in replevin by Otto J. Bueb against Annie M. Geraty and Thomas Connery.    Defendants appeal from a determination of the general term of the city court of the city of New York affirming a judgment of the trial term, rendered on the verdict of a jury in plaintiff's favor (57 N. Y. Supp. 655).    Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Edmund T. Oldham, for appellants.
Edwin F. Stern, for respondent.

LEVENTRITT, J.  The question involved on this appeal is the
priority of the respective chattel mortgages of the plaintiff and the
defendant Thomas Connery.    John J. Geraty and George H. Ball
were co-partners in business in the city of New York.    Geraty lived
in New York county, while Ball resided in Kings county.    The firm,
in March, 1895, for money loaned, gave its promissory note in the
sum of $1,000, payable on demand, to one Kerwin, who subsequently
indorsed it over to the defendant Thomas Connery.    In April, 1895,
a second demand note in the sum of $2,500 was made to the defend-
ant Thomas Connery, likewise for money loaned.    On August 27,
1895, John J. Geraty, in the name of Geraty & Ball, executed a chat-
tel mortgage to the defendant Connery to secure both his and the
Kerwin loans.    This mortgage was filed on the following day in the
office of the register of the county of New York, the county where
Geraty lived, but was never filed in Kings county, the place of Ball's
residence.    On June 15, 1895, George H. Ball made his promissory
note in the sum of $1,500, payable in four months.    This was in-
dorsed in the firm name, and both Geraty and Ball requested the
plaintiff to add his indorsement that the note might be discounted at
the Fifth Avenue Bank.    This was done.    Three months later,
George H. Ball, in the name of Geraty & Ball, executed a chattel
mortgage, covering the same property, to the plaintiff as security for
the note.    This mortgage, dated September 16, 1895, was filed both
in New York and Kings counties on September 20, 1895.    The note
given to the defendant Thomas Connery having been protested on
August 28th, proceedings were instituted on September 20, 1895, to
foreclose the mortgage given, and he subsequently took possession
of the chattels under and by virtue of these proceedings.    The note
indorsed by the plaintiff having been likewise protested on Septem-
ber 15th, he made formal demand of the defendant Connery and of
the defendant Geraty—who, with Connery, claimed ownership at the
time of the demand—for the delivery of the chattels.    This being re-
fused, the present action in replevin was instituted.    On the trial
the defendants claimed the title to the chattels under the foreclosure
of the mortgage given by the firm of Geraty & Ball to Thomas Con-
nery, while the plaintiff claimed that the mortgage was void as to
him, as it had not been properly filed in the counties where the sev-
eral members of the firm resided.    A verdict was directed for the
plaintiff, and the defendant Connery has appealed from an affirmance
by the general term to this court.

The statute invoked by the plaintiff and in force when the several
mortgages were recorded is Laws 1833, c. 279, §§ 1, 2, and reads:

"Section 1. Every mortgage, or conveyance intended to operate as a mort-
gage, of goods and chattels hereafter made, which shall not be accompanied
by an immediate delivery and be followed by an actual and continued change
of possession of the things mortgaged, shall be absolutely void as against cred-
itors of the mortgagor, and as against subsequent purchasers and mortgagees
in good faith, unless the mortgage, or a true copy thereof, shall be filed as di-
rected in the succeeding section of this act.

"Sec. 2. The instruments mentioned in the preceding section shall be filed in the several towns and cities of this state, where the mortgagor therein, if a resident of this state, shall reside at the time of the execution thereof; and if not a resident, then in the city or town where the property so mortgaged shall be at the time of the execution of such instrument. * * *"

We think that, under this statute, the defendant Connery's mortgage would be void against a subsequent mortgagee in good faith, but that the plaintiff has not established that such a bona fide title vested in him. The question, we believe, is new in this state as to where a mortgage on partnership personal property must be recorded to give it validity against creditors, subsequent purchasers, and mortgagees in good faith. The New York statute, however, has been construed in the United States supreme court (Stewart v. Platt, 101 U. S. 731), where the rule has been laid down that "a chattel mortgage, executed by a firm upon firm property, is void, under the New York statute, as against creditors, subsequent purchasers, and mortgagees in good faith, unless filed in the city or town where the individual members of the firm severally reside." 101 U. S., at page 737. In those states where, under similar statutes, the question has arisen, the same rule has been announced. Granger v. Adams, 90 Ind. 88; Briggs v. Leitelt, 41 Mich. 79, 1 N. W. 942; Aultman v. Guy, 41 Ohio St. 598; Rich v. Roberts, 48 Me. 548; and see De Courcey v. Collins, 21 N. J. Eq. 357. The case of Hubbardston Lumber Co. v. Covert, 35 Mich. 254, has been cited as laying down a contrary rule; but a careful examination of that case will show that it is confined to a mortgage made by a resident partner, where the other partner lives abroad. Besides, a subsequent case in the same state (Briggs v. Leitelt, supra), restricts the application of the rule of the Hubbardston Case to its particular facts, and declares it inapplicable to cases where all the partners reside in the state. The reasoning underlying the accepted rule is that the residence of the mortgagor—i. e. the partnership—is that of the individual members composing the firm. In the eye of the law, a partnership has no existence, as an entity, apart from its component members. Lindl. Partn. (2d Am. Ed.) bk. 1, c. 6, § 1. A firm sues and is sued in the names of the several partners, and in all legal proceedings is reached only through its individual members. The fact that the statute in regard to filing (supra) uses the word "mortgagor" is unimportant, in view of the provision of the statutory construction law that "words in the singular number include the plural." Laws 1892, c. 677, § 8; Troy Waste Mfg. Co. v. Saxony Woolen Mills, 4 Misc. Rep. 245, 24 N. Y. Supp. 693. The partnership, as composed of its individual members, is the mortgagor. The contention that "the firm," as such, was the mortgagor, and that its residence or domicile was in the city of New York, where the Connery mortgage was filed, is met by the statement of Mr. Justice Harlan (Stewart v. Platt, supra) that "the statute, upon its face, furnishes persuasive evidence that its framers intended to make a sharp distinction between the place where the property might be at the time of the execution of the mortgage and the place of the mortgagor's residence. If he be a nonresident of the state of New York, the mortgage may be filed in the town or city where the property shall be at the time of the execution of the mortgage. If he be a resident,

then his residence, not the actual situs of the property, governs."
101 U. S., at page 737.

It follows, therefore, that the Connery mortgage, to have been
valid against creditors, subsequent purchasers, and mortgagees in
good faith, should have been filed both in New York and Kings coun-
ties. If the plaintiff had been a mortgagee in good faith, then, as
his mortgage was properly filed, and that of Connery not, the latter's
would have been absolutely void as against him. But it is very
clear from the evidence that the plaintiff was not, within the mean-
ing of the statute, a mortgagee in good faith, as his security was
given for an antecedent obligation. The consideration, instead of
being present, was entirely past. The transaction with reference to
the note took place on June 15, 1895. The chattel mortgage was
given on September 10, 1895. According to the record, the idea of
giving a mortgage, and its execution, were contemporaneous. The
respondent contends that the language used at the time of the orig-
inal transaction imported an agreement to make a mortgage as part
consideration of the plaintiff's indorsement, and that he thereby be-
came a mortgagee in good faith. Even if we concede this proposi-
tion sound in law (Harder v. Plass, 57 Hun, 540, 11 N. Y. Supp. 226),
it is unsupported in fact. The entire evidence on the subject of this
alleged agreement is embraced in the following testimony of the
plaintiff:

"I told them I don't like to indorse a note, as I had never done it before.
Mr. Geraty and Mr. Ball both said I need not be afraid, that they would secure
me, that they would take care of the note when it became due, and would take
care I should not suffer any loss at all."

It would be doing considerable violence to this language to construe
it into an agreement for a mortgage. It would be distorting it, not
construing it. When the chattel mortgage was given, it was a gra-
tuitous security, for which, at the time, the plaintiff gave, and the
mortgagor received, nothing. That which was secured was an ante-
cedent debt; and the plaintiff, therefore, was not, under the statute,
a mortgagee in good faith. Jones v. Graham, 77 N. Y. 628; Doig v.
Haverly, 92 Hun, 176, 37 N. Y. Supp. 455; Button v. Rathbone, 126
N. Y. 187, 27 N. E. 266. It cannot avail the plaintiff that the Con-
nery mortgage was likewise given for an antecedent indebtedness.
It was prior in date to the plaintiff's, and therefore valid against
him, unless he should prove himself to have been a mortgagee in good
faith. Besides, the defendant Connery was in possession; and, in
replevin, actual possession is evidence of title against every one who
does not show a better title. 20 Am. & Eng. Enc. Law, 1054, and
cases cited. The judgment must be reversed.

Judgment reversed, and a new trial ordered, with costs to the ap-
pellants to abide the event. All concur.